**Opinion issued May 31, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-22-00396-CV
_____

## IN RE C.J.S., A CHILD

**On Appeal from the 387th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 21-DCV-281601**

## OPINION

This is an appeal from a default final order in a suit to establish paternity and suit affecting the parent-child relationship. The trial court held it had jurisdiction to make an initial child custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act, and it subsequently issued a default final order naming the child's parents joint managing conservators, awarding the mother primary conservatorship of the child, ordering supervised visitation for the father,

and ordering the father to pay child support.  The child's father, Zach, filed a post-judgment motion asking the trial court to set aside the default judgment and to reconsider its earlier denial of his plea to the jurisdiction.  Alternatively, he requested a new trial.  The trial court conducted a hearing on Zach's post-judgment motion and denied all requested relief.  This appeal ensued.

In his first three issues on appeal, Zach argues (1) the trial court abused its discretion by denying his motion to set aside the default judgment under the *Craddock* standard; (2) the trial court abused its discretion initially by holding it had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act and later by denying his request to reconsider the denial of his plea to the jurisdiction; and (3) the final judgment is void for lack of subject matter jurisdiction. Alternatively, in issues four and five, Zach argues that (4) the trial court's orders regarding conservatorship and possession should be reversed because they were based on insufficient evidence, ignored applicable legal presumptions, and imposed restrictions exceeding those necessary to protect the child's best interest; and (5) because the trial court's orders regarding child support and medical support were "materially influenced" by the potential outcome of the trial court's rulings on conservatorship and possession, they too should be reversed.  Finally, in issues six and seven, Zach argues the trial court abused its discretion in awarding (6) attorneys'

fees and (7) "generic, unconditional" appellate fees because the fees are not supported by sufficient evidence.

We reverse the court's final judgment as to the award of attorneys' fees and remand to the trial court for a determination of fees consistent with this opinion. We affirm the trial court's final judgment in all other respects.

## Background

The child involved in this suit is C.J.S. C.J.S. was three months old at the time his mother, Victoria, filed the custody proceedings below in March 2021. C.J.S. was born in Webster, Texas on December 1, 2020. It is undisputed that he lived in Texas with Victoria during the first five weeks of his life. C.J.S.'s father, Zach, lives in Louisiana.

In addition to C.J.S., Victoria has two older children from other relationships: a daughter, "M.G.", who lives in Texas, and a son, "J.", who lives in Louisiana. Victoria shares joint custody with the father of each child. Sometime in January 2021, when C.J.S. was about five weeks old, Victoria began to travel back and forth to Louisiana so that she could exercise her visitation rights over J. Victoria was breastfeeding C.J.S. at the time, so she took C.J.S. with her when she traveled to Louisiana.

On March 4, 2021, while Victoria was in Louisiana, Zach filed a "Rule to Establish Paternity & Custody for Joint Custody Implementation Plan & for

3

Injunctive Relief" in the 15th Judicial District Court for the Parish of Vermilion, Louisiana ( "Louisiana Action").  Zach alleged in his petition that jurisdiction was "proper in the State of Louisiana" because Zach and C.J.S. were domiciled in Vermillion Parish, Louisiana, and also that "Louisiana [was] the home state of the child and his domicile for the entirety of his life."  He requested that a temporary restraining order be issued because "Victoria is threatening to remove the minor child from the State of Louisiana . . . relocating permanently to the State of Texas."  The following day, the Louisiana court issued a temporary restraining order enjoining Victoria from taking C.J.S. out of Louisiana.  On March 10, 2021, Victoria was served with the suit and restraining order at an address in Abbeville, Louisiana, which Zach alleged was Victoria's residence in Louisiana.

Victoria does not dispute receiving service of the Louisiana Action or the issued temporary restraining order.  Rather, explaining she believed the Louisiana court could not exercise jurisdiction over her or C.J.S., Victoria traveled back to Texas with C.J.S.  C.J.S. remained in Victoria's sole care in Texas until June 24, 2021, when according to Victoria, Zach traveled to Texas to visit C.J.S. and without her consent, removed C.J.S. from Texas and took him to Louisiana.[1]

---

[1]     Victoria argued below that Zach "duped her" into meeting Zach and his family "at a police station in Richmond, Texas under the guise that they just wanted to briefly see the child . . . [but Zach] and his family physically removed the child from [Victoria] and fled back to Louisiana with the child."  Zach argued that he came "to

On March 15, 2021, Victoria filed an "Original Petition to Adjudicate Parentage and Original Petition in Suit Affecting Parent-Child Relationship" in the 387th Judicial District Court of Fort Bend County, Texas (the "Texas Action"). She executed an affidavit acknowledging the proceedings filed by Zach in Louisiana.

Subsequently, on April 5, 2021, Victoria filed an "Exception of Lack of Subject Matter Jurisdiction, Lis Pendens, and Forum Non Conveniens" ("Exceptions") in the Louisiana Action, contesting the court's jurisdiction and advising the Louisiana court that a child custody proceeding was pending in Texas. Also on April 5, 2021, Zach filed a "Plea to the Jurisdiction and Request for Court to Decline Jurisdiction" in the Texas Action, urging the Texas trial court to dismiss Victoria's lawsuit for lack of subject matter jurisdiction. In the alternative, Zach asked the trial court to decline jurisdiction and to dismiss the case because (1) there was a pending Louisiana Action; (2) Victoria lived in Louisiana; and (3) Louisiana was C.J.S.'s home state.

### Plea to the Jurisdiction Hearing: April 5, 2021

The Texas court convened a hearing on Zach's Plea to the Jurisdiction the same day the plea was filed.[2] Only Victoria and Zach testified at the hearing.

_____

Texas with a valid Louisiana order giving [him] custody and got the police to help [him] get [his] son."

[2] The record does not explain the circumstances that allowed the hearing on Zach's Plea to the Jurisdiction to be heard the same day the pleading was filed. Regardless,

## A. Victoria's Testimony

Victoria testified that C.J.S. was born in Webster, Texas on December 1, 2020. Victoria received pre-natal care in Texas, and after his birth, C.J.S. saw a pediatrician at UTMB in League City, Texas. Victoria testified that as of the date of the hearing—April 5, 2021—C.J.S. had spent more than half of his life in Texas. C.J.S. lived in Texas all of December 2020, and he was present in Texas (1) twelve days in January 2021; (2) ten days in February 2021; (3) eight days in March 2021; and (4) all of April 2021 (through the date of the hearing). Victoria testified that she has a temporary place in Louisiana where she stays when she visits her older son, J., who lives in Louisiana. She shares custody of J. with J.'s father on a 2/2/3 schedule and she obtained the temporary housing to visit J. Victoria testified that she considers her permanent residence to be in Rosenberg, Texas, where she has resided "[s]ince March of 2020." She met Zach while she was living in Texas.

On cross-examination, Victoria acknowledged there was a pending case involving C.J.S. in Louisiana, and she testified that she was served with the Louisiana Action at her temporary residence in Louisiana. She also acknowledged there was a case involving J. in Louisiana, and that the final order in that case had been entered in October 2020. Asked whether it was true "she [had] resided in

the hearing transcript does not indicate either party objected to the date of the hearing.

Louisiana for the past several years" and had also resided in Louisiana after "the birth of [C.J.S.]," Victoria testified, "Correct." Zach's counsel handed Victoria a copy of the certified custody order involving J. and confronted her with the statement in the order, dated October 1, 2020, where she identified an address in Erath, Louisiana as her residence. He also asked Victoria whether she had stated, in the same document, that she was employed at LA 14 Lounge in Louisiana. Victoria testified she worked at the lounge for about two weeks at the "end of July, beginning of September [2020]," and that prior to that she was not employed in Louisiana. The last time she received a paycheck from the lounge was in October 2020.

Also on cross-examination, Victoria testified she has an older daughter, M.G., who resides in Texas and that there is a custody case involving M.G. in Harris County, Texas. M.G.'s father has primary custody. She testified that, in 2017, she told M.G.'s father that she had moved to Louisiana and she filed for a modification to "change the pick[-]up and drop off location" for M.G. "to a halfway point between [her] residence in Louisiana and [M.G.'s] residence" in Texas. She testified that since then, she had given notice to M.G.'s father that Victoria's address is now in Rosenberg, Texas.

On re-direct, Victoria testified that because of the Texas custody order involving M.G. and the Louisiana custody order involving J., she travels back and forth between Texas and Louisiana. She testified, however, that C.J.S. was born in

7

Texas, that his pediatrician is in Texas, that he received his vaccinations in Texas, and that his maternal grandparents are in Texas.

**B.     Zach's Testimony**

Zach testified that he works as a deckhand on a tugboat in Louisiana. He works on the tugboat offshore about two weeks at a time. Zach testified that he and Victoria met through a mutual friend, and that their interactions were in Louisiana. According to Zach, he and Victoria "hooked up and she ended up pregnant." Victoria told Zach she was unsure whether the child was his. Zach testified that the last time he saw Victoria in person was on March 4, 2020, at her residence in Texas, where she lives with C.J.S. Zach testified that to his knowledge, Victoria has resided at her address in Texas for six months. Zach testified that he filed the Louisiana Action involving C.J.S. in early March 2020, and that Victoria was served with the suit on March 10, 2020, at her home in Abbeville, Louisiana.[3]

After hearing testimony from both parties, the trial court judge recessed the hearing so that she could confer with the Louisiana court as required by Section 152.206(b) of the Uniform Child Custody Jurisdiction and Enforcement Act. Both parties agreed such conference was appropriate. Despite the trial court's multiple

---

[3]      No further testimony or evidence was offered at the hearing.

diligent efforts to confer with the Louisiana court, however, the Louisiana trial court judge refused to confer with the Texas trial court judge.[4]

## Proceedings in Louisiana

On June 17, 2021, the Louisiana court conducted a hearing on Victoria's Exceptions. The Louisiana court held that Victoria and C.J.S had "significant contact with the State of Louisiana," and it thus denied Victoria's Exceptions in a judgment dated June 23, 2021. The Louisiana court did not make any determinations concerning the home state of the child, as required under the Uniform Child Custody Jurisdiction and Enforcement Act, nor did it consider whether Texas would be a more appropriate forum. The Louisiana court directed the parties to work out a schedule where both could have access to C.J.S.

On July 22, 2022, Victoria filed in the Louisiana Action a "Notice of Intention to Apply for Supervisory Writs of Review and Request for Stay." The Louisiana court signed an order on July 26, 2022, granting Victoria until August 26, 2022 to file an application for supervisory writs and staying the proceedings in the trial court "pending resolution of the Application for Writs of Review." Within the provided

---

[4]    In her issued Findings of Fact, the Texas trial court stated that pursuant to Texas Family Code §152.110 and an Agreed Motion to Confer signed by the parties, she "attempted on multiple occasions to schedule a UCCJEA conference with the Louisiana Court." She called and left messages for the Louisiana trial court judge on April 12, 19, 27, and 28, 2021 and again on May 14 and 15, 2021 to no avail. "[N]o return call was ever received."

time, Victoria appealed the Louisiana trial court's denial of her Exceptions to the Louisiana Third Circuit Court of Appeal, which denied supervisory writ review on September 20, 2021. She also filed an application for writ of review with the Louisiana Supreme Court, which denied review on October 28, 2021.

Despite its July 26, 2021 order granting a stay while Victoria's supervisory writs remained pending, on August 2, 2021, the Louisiana court judge signed a final order granting sole custody of C.J.S. to Zach and ordering supervised visitation for Victoria, among other things.

**Ruling on Plea to the Jurisdiction in Texas: September 8, 2021**

While Victoria's supervisory writs remained pending in Louisiana, the Texas trial court reconvened the hearing on Zach's Plea to the Jurisdiction on September 8, 2021. At that time, no court had exercised jurisdiction over the case based on a finding of "home state" jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.

No further evidence was presented to the trial court on the jurisdictional question. The parties offered only the argument of counsel. Zach argued that the court should grant his Plea because Zach had filed his action in Louisiana first, the Louisiana court had already conducted a hearing "specifically dealing with the jurisdictional issues brought by [Victoria] in Louisiana," and the trial court in Louisiana had already entered a final judgment on August 2, 2021 that "addressed

10

all of the SAPCR" issues."[5]  Thus, he argued, his Plea was meritorious because "Louisiana ha[d] already been ruled as the home state of the child,"[6] "[j]udgment ha[d] already been entered in Louisiana,"[7] and "Louisiana [was] the court of continuing exclusive jurisdiction."

Victoria argued that Zach's Plea should be denied because the Louisiana court had failed to confer as required under the Uniform Child Custody Jurisdiction and Enforcement Act and further because Texas was the home state of the child.  Victoria argued that Texas was the home state of the child because C.J.S. was born in Texas, C.J.S.'s pediatrician was in Texas, and, at the time she filed suit, C.J.S. had spent more time in Texas than in Louisiana.

---

[5]    A SAPCR is a Suit Affecting the Parent-Child Relationship.

[6]    Contrary to Zach's statement, no court had conducted a home state analysis or otherwise held Louisiana was the home state of the child at the time of the September 8, 2021 hearing.  Although the Louisiana court had exercised jurisdiction and entered a final judgment in the Louisiana Action, the court did not conduct a home state analysis, as required under the Uniform Child Custody Jurisdiction and Enforcement Act, but instead exercised jurisdiction based on a finding of "significant contacts" jurisdiction.  The significant connection analysis may be conducted only after a home state analysis proves fruitless.  *See In re Oates*, 104 S.W.3d 571, 578 (Tex. App.—El Paso 2003, orig. proceeding) ("Significant connection jurisdiction should be employed only when Texas is not the home state and it appears that no other state could assert home state jurisdiction."); *Barabarawi v. Rayyan*, 406 S.W.3d 767, 772 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (Significant connection jurisdiction "applies only if no other state can exercise home state jurisdiction, or if the state that can exercise home state jurisdiction has declined jurisdiction for other specified reasons.") (citing TEX. FAM. CODE § 152.201(a)(2)).

[7]    As we discuss below, the Louisiana court's final judgment dated August 2, 2021 was later vacated.

11

The trial court denied Zach's Plea, stating:

> The Court finds that we did try to follow the UCCJEA and tried to make contact with the Louisiana court. We tried numerous times over several weeks, the Louisiana court just apparently thumbed their nose at us and did not reply. So because of that and based on what the Court has previously heard about where the child was born, where the child's doctors have been, the Court is going to take jurisdiction over this case[.]"

After denying Zach's Plea, the Texas trial court conducted a temporary orders hearing concerning conservatorship, possession and access, and child support. Zach and his attorney elected not to participate in the hearing for fear of waving their objection to the court's jurisdiction.[8]

At the conclusion of the temporary orders hearing, the Texas trial court entered temporary orders naming Zach and Victoria joint managing conservators of C.J.S. and granting Victoria the exclusive right to determine C.J.S.'s residence in Fort Bend and contiguous counties, the right to receive child support, and the right to make health- and education-related decisions for C.J.S. The trial court determined it had jurisdiction over the case and personal jurisdiction over the parties. The trial court also entered orders of possession, ordering that Zach's possession over C.J.S.

---

[8] An objection to lack of subject matter jurisdiction cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *see also Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) ("Subject-matter jurisdiction cannot be waived, and can be raised at any time.").

take place in Fort Bend and contiguous counties, and be restricted to "keeping the child in those counties."

After the temporary orders hearing, Zach filed a petition for writ of mandamus in this Court, asserting the Texas trial court improperly exercised jurisdiction over the parties and the child. This Court denied the petition without opinion on January 13, 2022.[9]

Meanwhile, on December 20, 2021, Victoria filed a Petition to Annul Judgment, for Stay Order, and for Injunctive Relief ("Motion to Annul") in a separate docket number in Louisiana state court. She argued that the Louisiana court's August 2, 2021 final judgment should be annulled because Louisiana is not C.J.S.'s home state, the trial court issued its judgment without a legal finding on paternity, and the judgment was issued while a stay order was in place ("Second Louisiana Action.").[10]

### The Texas Trial: March 10, 2022

On March 10, 2022, the Texas trial court conducted a final trial. Although it is undisputed that Zach and his attorney had notice of the trial, neither Zach nor his attorney appeared. Victoria and her attorney were the only witnesses who testified.

---

[9]    *See In re McNeil*, No. 01-21-00538-CV, 2022 WL 120137 (Tex. App.—Houston [1st Dist.] Jan. 13, 2022, orig. proceeding) (mem. op.).

[10]   Victoria also filed a motion to recuse the Louisiana trial judge who issued the final judgment. After a hearing before an ad hoc judge, the judge granted her motion, and the case was reallotted to another Louisiana judge.

Victoria testified that on June 24, 2021, Zach traveled to Texas to visit C.J.S. and, without her consent, "took off" to Louisiana with C.J.S., where C.J.S. remains with Zach. Since the temporary orders hearing on September 8, 2021, Victoria had "been able to see" her son only "three times supervised in the state of Louisiana." Victoria testified that Zach violated the Temporary Orders the Texas court entered pertaining to possession and access to C.J.S.

Victoria testified that C.J.S. was born in Webster, Texas on December 1, 2020, and that he lived in Texas "until he was taken [on] June 24[, 2021]." Victoria was breastfeeding C.J.S. exclusively, and Zach did not communicate with her about transitioning C.J.S. off breast milk when he took him to Louisiana or tell her how C.J.S. was doing. Victoria believed Zach would continue to violate the Texas court's orders and that if C.J.S. were returned to her, Zach would again try to take him to Louisiana.

Victoria registered C.J.S. with Medicaid in Texas. To her knowledge, Zach did not have Medicaid for C.J.S. in Louisiana, but he had C.J.S. registered "on the insurance he has through work." She testified C.J.S. was "a little over a month" when he and Victoria began to travel from Texas to Louisiana to visit her son J. Her possession arrangement with respect to J. was a 2/2/3 schedule, so she had to travel

frequently from Texas to Louisiana. During that time, she maintained a residence in Texas.[11]

Victoria testified that Zach "work[ed] on a boat as a deckhand either working a week off shore or two weeks offshore and then only a week home." According to Victoria, when Zach is offshore, Zach's mother cares for C.J.S. Victoria testified she did not believe it was in C.J.S.'s best interest for his paternal grandparents to raise him. Victoria testified that her communications with Zach's parents have been "bland" and lack information about C.J.S.'s condition.

Victoria requested that she and Zach be appointed joint managing conservators, but that she be awarded the exclusive right to make decisions regarding invasive medical procedures, education, and psychological or psychiatric treatment. She testified that she believed such an arrangement was in her son's best interest. She also requested that Zach be ordered to return C.J.S. to Victoria and that he have supervised visits with C.J.S., based on his taking the child and not allowing her to see him without supervision.

According to Victoria, after Zach took C.J.S. to Louisiana, he did not provide her with information concerning C.J.S.'s medical appointments, medical needs or "things that he is doing." Victoria testified that she tried to coparent with Zach by

---

[11]     Victoria also has a daughter, M.G. in Texas. M.G.'s father is her primary caretaker and has the right to establish residence for her in Harris County, Texas.

texting him, "asking about doctor's appointments, things that [C.J.S.] is doing. And he gives me no answer saying that he has it handled." According to Victoria, when she learned that her son was prescribed allergy medicine, Zach refused to tell Victoria what types of allergies he had.

Victoria testified that her visits with C.J.S. in Louisiana have been "[r]ocky because my son doesn't know, really, who I am anymore," and the noisy environment in which she was required to visit made him "fussy" and "just uncomfortable." She testified she had not seen C.J.S. for approximately two months, because her Louisiana attorney had not been successful in scheduling visits since she had last seen C.J.S. in January 2022.

At the conclusion of the trial, on March 10, 2022, the court rendered its judgment from the bench, ordering that Victoria and Zach be appointed joint managing conservators, that Victoria have the exclusive right to make medical and educational decisions and to determine C.J.S.'s primary residence, that Zach pay $523.32 a month in child support, that Zach's possession and access be supervised, and that all other rights be joint. The trial court ordered that Zach return the child to Victoria by March 18, 2022, and it awarded Victoria attorneys' fees and appellate attorneys' fees. That same day, the trial court signed a written Final Order.

Victoria filed a copy of the Texas Final Order in the Second Louisiana Action requesting that the order "be registered in [the] case pursuant to La. R.S. 13:1827

and La.Ch.Code art. 1306.5." Zach timely filed an objection to the registration of the Texas order, and the Louisiana court set a hearing for August 24, 2022 to hear the matter. *See McNeil v. Stern*, 371 So. 3d 1187, 1190 (La. Ct. App. 2023).

**Zach's Post-Judgment Motions in Texas**

On April 1, 2022, after securing new counsel, Zach filed in the Texas Action a combined Motion to Set Aside Default Judgment ("Motion to Set Aside") and to Reconsider Dismissal for Lack of Subject Matter Jurisdiction ("Motion for Reconsideration"), Alternatively, to Grant a New Trial" ("Motion for New Trial").

**A.      Motion to Set Aside Default Judgment**

In his Motion to Set Aside, Zach requested that the trial court set aside the default Final Order entered on March 10, 2022. He argued he was entitled to relief under the *Craddock* factors.[12] He argued that his failure to appear at trial "was the result of accident and mistake, rather than intentional or conscious indifference, because Zach fully relied upon the erroneous advice of his trial counsel, advice that directed Zach "not to appear and/or participate in trial (and/or in an earlier temporary orders hearing)" to avoid waiving his objections to the trial court's jurisdiction. Zach also argued that he had a meritorious defense to Victoria's SAPCR because the trial court lacked subject matter jurisdiction under the Uniform Child Custody

---

[12]      *See Craddock v. Sunshine Bus Lines, Inc.,* 133 S.W.2d 124, 126 (Tex. 1939) (listing factors a movant must establish to set aside a default judgment).

Jurisdiction and Enforcement Act, and because the terms of the Texas order were not in C.J.S.'s best interest. Finally, Zach argued that setting aside the Final Order and dismissing the Texas suit would not result in delay, prejudice, or injury to Victoria.

In his affidavit attached to the Motion to Set Aside, Zach stated that he did not appear at trial based on the advice of his counsel who told him that "if the trial court denied [his] challenge to Texas jurisdiction, then we would not participate in any other hearings because it would create 'an appearance' and I would waive my right to object to jurisdiction in any appeal." His attorney told him that he "could not submit evidence in the proceedings because it would have the same effect." Zach averred "he had no reason to doubt the legal advice or instructions" his trial counsel gave him with respect to waiving his right to contest subject matter jurisdiction. On the advice of counsel, he did not participate either at the temporary orders hearing or at trial. Zach stated the Final Order in Texas conflicted with the Louisiana court's award of sole custody to him, and having two conflicting orders would create a lot of difficulty.[13]

Zach also attached an affidavit from his mother, Michele, to his Motion to Set Aside. In her affidavit, Michele testified that she communicated with Zach's trial

---

[13]     The affidavit also contained arguments intended to establish a meritorious defense to Victoria's SAPCR.

counsel, who told her that Zach would contest the Texas court's jurisdiction but that he should "not participate in any hearings dealing with other issues because if [he] did not win the jurisdiction issue Zach would waive his right to object on appeal." She "made sure to confirm" with trial counsel that Zach need not appear for the March 2022 trial and Zach's counsel "told us [Zach] could not appear without waiving his rights." She attached emails from trial counsel to her affidavit "demonstrating his advice and his instructions that Zach should not appear for trial."

In response to the Motion to Set Aside, Victoria objected globally to "the numerous hearsay statements" in Zach's motion, but she did not identify any of the purported hearsay.[14] She argued that Zach's failure to appear at trial was not a mistake but rather "intentional or the result of conscious indifference," given Zach's acknowledgment that he relied on his counsel's "erroneous advice" not to appear at trial. Victoria further argued that Zach's attempt to set up a meritorious defense to her SAPCR fell short because his defense was based in part on his already failed attempt to challenge the jurisdiction of the court, and further that Zach could not establish the granting of the Motion to Set Aside would "not delay or otherwise work

---

[14] *See Moulton v. Vaughn*, 982 S.W.2d 107, 110 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding objections "directed to the affidavit as a whole" that fail to "point out which part is objectionable on which ground . . . preserve nothing for review."); *Hanks v. Huntington Nat'l Bank*, No. 01-15-00188-CV, 2016 WL 1235689, at *7 (Tex. App.—Houston [1st Dist.] Mar. 29, 2016, pet. denied) (mem. op.) ("Absent a specific objection, the complaining party waives any argument concerning the improper admission of the evidence.").

an injury to the plaintiff" because the trial court had already reset the final hearing twice, once to allow time for this Court to rule on Zach's Petition for Writ of Mandamus, and a second time to give Zach "additional notice of the final hearing so that [he] could appear and participate."[15]  Victoria argued that further delay would only result in harm to C.J.S. and Victoria, who had already expended $35,000 in attorneys' fees, which Zach did not agree to tender in full, and she had "wholly exhausted her funds."

## B.     Motion to Reconsider for Lack of Subject Matter Jurisdiction

In his Motion to Reconsider, Zach asked the Court to reconsider its ruling on his Plea to the Jurisdiction, arguing that Louisiana was C.J.S.'s home state when Victoria filed the Texas Action or that simultaneous proceedings in Louisiana prevented the Texas court from exercising jurisdiction over C.J.S.  Zach based his motion on the following arguments: (1) Zach filed the Louisiana Action first; (2) he served Victoria with the Louisiana Action at her home in Louisiana, despite her claiming Texas residency; (3) Victoria intentionally left Texas to give birth to C.J.S. and remained in Texas for only thirty days before returning to Louisiana, where C.J.S. had predominantly resided when he filed the Louisiana Action; (4) Louisiana and Texas have virtually identical versions of the Uniform Child Custody

---

[15]     Victoria's response to the Motion to Set Aside did not address the Motion to Reconsider for Lack of Subject Matter Jurisdiction or the Motion for New Trial.

20

Jurisdiction and Enforcement Act; (5) the Louisiana courts, including the Louisiana Supreme Court, had all affirmed the trial court's jurisdiction over C.J.S.; (6) no Texas appellate court had considered the merits of the Texas court's ruling on jurisdiction; (7) Victoria violated Louisiana orders by bringing C.J.S. to Texas when she filed the Texas Action and thus the court's jurisdiction resulted from Victoria's unjustifiable conduct;[16] (8) the Texas court had authority to decline its perceived jurisdiction in favor of Louisiana "where proper UCCJEA jurisdiction ha[d] already been determined through Louisiana's highest court;" (9) the evidence supported a finding that Louisiana was C.J.S.'s home state and Victoria's claims to the contrary "lack credibility;" (10) in the alternative, neither court has home state jurisdiction over C.J.S.; (11) if neither court has home state jurisdiction over C.J.S., the court must consider whether there are "significant connections" in Texas, and Zach contended both parents and C.J.S. had more significant connections to Louisiana; (12) the Louisiana court's failure to communicate with the Texas court has no bearing on the jurisdictional ruling; and (13) Section 152.206 of the Texas Family Code requires Texas "to dismiss any child custody proceeding . . . if it determines that such a proceeding has been commenced in another state having jurisdiction in substantial conformity to the Texas UCCJEA and that the other state proceeding has

---

[16]    Zach relied on Section 152.208 of the Texas Family Code, which pertains to unjustifiable conduct by the party seeking to invoke Texas jurisdiction. We discuss this argument below.

21

not been terminated or the court of that other state has not deferred to Texas upon a finding that Texas is a more convenient forum."

Zach and Victoria testified during the hearing on the Motion for Reconsideration. As it concerns the court's jurisdiction, Victoria testified that C.J.S. was born on December 1, 2020 in Webster, Texas. He lived with her in Rosenberg, Texas, and he was under her continued care from the time he was born until January 2021. At that time, she started traveling to Louisiana to visit her older son J. She had a "two days on, two days off, three days on again" schedule with J. Because of her possession schedule over J., she made living arrangements in Louisiana, first staying with a friend and later renting a trailer. When she traveled between Texas and Louisiana with C.J.S. to visit J., C.J.S. returned to Texas with her between visits. She lived in Rosenberg, Texas in early 2021, found a pediatrician for C.J.S. near her home, and obtained insurance for him in Texas. She testified that Zach "stated multiple times . . . that he is not going to follow Texas rulings, [and] that Louisiana has jurisdiction."

Relevant to the jurisdictional issues before the court, Zach testified that there were two orders concerning custody over C.J.S., one in Texas and one in Louisiana, and that this caused him concern. He testified that Victoria was "living in Louisiana." He stated he did not know when C.J.S. first left Texas, after being born and that he had no evidence "as to whether the child was present in Texas and for

22

how long."  During Zach's testimony, his counsel admitted into evidence a "Correcting Birth Certificate" form filled out by Victoria in February 2021, in which Victoria sought to identify Zach as the father on C.J.S.'s birth certificate.  On page 4 of the form, Victoria lists her address as Rosenberg, Texas, but on page 5, she lists her address as Abbeville, Louisiana.  Zach also admitted into evidence a text exchange with Victoria where Victoria gives Zach information concerning food she has been feeding C.J.S. and some of his required care due to having severe sensitive skin.  Zach presumably offered this evidence to dispute Victoria's argument that she was breastfeeding C.J.S. exclusively, and to argue Victoria resides in Louisiana.[17]

Zach argued that based on his arguments, the evidence previously submitted, and the affidavits attached to his Motion for Reconsideration, the trial court should reconsider its ruling and hold it lacks subject matter jurisdiction.

## C.    Motion for New Trial

In the alternative to his Motion to Set Aside and Motion to Reconsider, Zach moved for a new trial on six grounds.  He argued that (1) the orders designating Victoria as primary joint managing conservator were not in C.J.S.'s best interest and there was insufficient evidence addressing the "various factors" the court should

---

[17]    Zach's counsel also attempted to introduce into evidence (1) an acknowledgment of paternity between Victoria and J.'s father; and (2) a letter from Victoria's attorney to J.'s father's attorney.  But those exhibits, which Zach attached to his affidavit, were not admitted into evidence.

consider in determining which parent should be designated as primary conservator; (2) there was legally and factually insufficient evidence offered in support of the required factors under Section 153.254(a) of the Texas Family Code[18] for possession and access for a child under the age of three; (3) the existing order did not render a prospective order for possession and access for when C.J.S. turns three; (4) the orders for possession and access "impose[d] restrictions and limitations on Zach's possession with the child which exceed[ed] those required to protect the best interest of the child" pursuant to Section 153.193[19] of the Texas Family Code; (5) the orders for child support and medical support did not consider the correct amount of Zach's monthly net resources or consider evidence of the expenses "that would be incurred for long distance travel" with C.J.S. to exercise possession; and (6) the attorneys' fee award is not supported by legally or factually sufficient evidence.

The trial court conducted a hearing on Zach's post-judgment motions on May 16, 2022.[20] At the conclusion of the hearing, the trial court took the motions under advisement.

---

[18] Section 153.254(a) of the Texas Family Code enumerates the factors that a court "shall consider" in rendering an order for possession of a child less than three years of age. *See* TEX. FAM. CODE § 153.254(a).

[19] Section 153.193 of the Texas Family Code states, "The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." TEX. FAM. CODE § 153.193.

[20] We discuss the hearing on the motions below.

**Findings of Fact and Conclusions of Law and Ruling on Motions**

The trial court issued its Findings of Fact and Conclusions of Law on April 22, 2022 and, on May 20, 2022, it issued additional findings and conclusions at Zach's request. On May 23, 2022, the trial court signed an order denying Zach's Motion to Set Aside, Motion to Reconsider, and his alternative Motion for New Trial. This appeal ensued.

**The Second Louisiana Action**

While this appeal was pending, the Louisiana trial court held a hearing on Victoria's Motion to Annul and her request to register the Texas March 10, 2022 Final Order. The trial court agreed with Victoria that the August 2, 2021 Louisiana final judgment "was a nullity because it was signed after [the judge had] issued a stay order . . . pending supervisory review of the issues of subject matter jurisdiction." On February 10, 2023, the Louisiana trial court issued its judgment declaring the August 2, 2021 Louisiana judgment null, but denying Victoria's motion to register the Texas Final Order stating that the Texas court had failed to "follow the requirements of the UCCJEA once the Louisiana court determined it had jurisdiction." *See McNeil v. Stern*, 371 So.3d 1187, 1191 (La. Ct. App. 2023). The Louisiana court held it had jurisdiction over the case because "as of March 4, 2021, the date [on which Zach] filed his original petition," Victoria and C.J.S. "were

domiciled in Louisiana," and thus "Louisiana, not Texas, was the home state of the child[.]"[21]  *Id.*

## The Uniform Child Custody Jurisdiction and Enforcement Act

In his second and third issues, Zach challenges the trial court's exercise of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").  In his second issue, Zach argues the trial court abused its discretion initially by finding it had jurisdiction under the UCCJEA and later by denying his request to reconsider the denial of his Plea to the Jurisdiction.  In his third issue, Zach argues the Final Order is void for lack of subject matter jurisdiction.

### A.     Standard of Review

The UCCJEA governs child custody jurisdictional disputes in Texas.  *In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) ("Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, set out in Family Code Chapter 152."); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (stating that UCCJEA is "exclusive jurisdictional basis for making a child custody determination

---

[21]     On September 27, 2023, the Louisiana Third Circuit Court of Appeal affirmed, holding, among other things, that Louisiana was C.J.S's home state on the date Zach filed suit in Louisiana and that the Fifteenth Judicial District Court in Louisiana had jurisdiction over the custody proceeding at issue.  *See McNeil*, 371 So.3d at 1194. The Louisiana Supreme Court denied review on January 10, 2024.  *McNeil v. Stern*, 376 So.3d 847 (La. 2024).

by a court of this state"); TEX. FAM. CODE. § 152.201. Whether a trial court has jurisdiction under the UCCJEA implicates subject matter jurisdiction. *Cortez v. Cortez*, 639 S.W.3d 298, 305 (Tex. App.—Houston [1st Dist.] 2021, no pet.). The issue of whether a trial court has subject matter jurisdiction is a question of law we review *de novo*. *In re Salminen*, 492 S.W.3d at 38; *see also Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005) (orig. proceeding) ("Construction of the UCCJEA's 'home state' provision as codified in the Texas Family Code is a question of law that we review *de novo*."). The party who seeks to invoke the trial court's jurisdiction has the burden "to allege facts that affirmatively demonstrate the court's authority to hear the case." *Cortez*, 639 S.W.3d at 306 (citing *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.)). "We construe the pleadings in favor of the party invoking jurisdiction and consider relevant evidence when necessary to resolve the jurisdictional issue." *Id.*

In our *de novo* review, we bear in mind that the trial court "is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we will not disturb the court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence." *In re I.I.G.T.*, 412 S.W.3d 803, 806 (Tex. App.—Dallas 2013, no pet.); *see also Weatherford Artificial Lift Sys., Inc. v. A & E Sys. SDN BHD*, 470 S.W.3d 604, 609 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (observing in *de novo* review, "[w]e do not 'disturb a trial court's resolution

27

of conflicting evidence that turns on the credibility or weight of the evidence'")
(quoting *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.);
*Mariles v. Hector*, No. 05-16-00814-CV, 2018 WL 3723104, at *6 (Tex. App.—
Dallas Aug. 6, 2018, no pet.) (mem. op.) (noting under *de novo* standard, "we defer
to the trial court's credibility determinations and resolution of [evidentiary]
conflicts"). Further, in conducting our *de novo* review, we may consider only those
facts that were before the trial court when it made its jurisdictional ruling. *See*
*Shahin v. Mem'l Hermann Health Sys.*, 527 S.W.3d 484, 487 (Tex. App.—Houston
[1st Dist.] 2017, pet. denied) (noting in *de novo* review of plea to the jurisdiction,
"[w]e review the actions of the trial court based upon the materials before it at the
time it acted"); *see also Trinity Universal Ins. Co. v. Day*, 155 S.W.3d 337, 339 (Tex.
App.—El Paso 2004, pet. denied) (observing in *de novo* review of plea to the
jurisdiction, "[w]e . . . consider evidence relevant to the jurisdictional issue that was
before the trial court when it ruled on the plea"); *Dallas-Fort Worth Int'l Airport Bd.*
*v. Ryan*, 52 S.W.3d 426, 427 (Tex. App.—Fort Worth 2001, no pet.) (same);
*Anderson v. Wynne*, 672 S.W.3d 498, 503 (Tex. App.—Houston [14th Dist.] 2023,
no pet.) (noting in *de novo* review of dismissal for lack of jurisdiction, "[w]e
determine whether the order is supportable based on the record before the trial court
when it ruled."); *Villarreal v. Villarreal*, No. 04-15-00551-CV, 2016 WL 4124067,
at *2 (Tex. App.—San Antonio Aug. 3, 2016, no pet.) (mem. op.) (noting in *de novo*

28

review of ruling on subject matter jurisdiction, "the trial court's order can only be upheld based on the legal theories that were before the court at the time of the hearing.").

## B.    The Texas UCCJEA

Texas adopted the UCCJEA in 1999 to replace the Uniform Child Custody Jurisdiction Act ("UCCJA"). *Powell*, 165 S.W.3d at 325. Because the UCCJA provided four bases for jurisdiction in a custody dispute but did not prioritize them, courts in different states could simultaneously exercise jurisdiction in child custody cases. *Id.* "The UCCJEA was designed, in large part, to remedy this situation by prioritizing home-state jurisdiction" over any other bases for exercising jurisdiction in custody disputes. *Id.*

The Texas UCCJEA is codified in the Texas Family Code. Section 152.201(a) of the Family Code "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." TEX. FAM. CODE § 152.201(b). "Initial [child custody] determination" refers to the "first child custody determination concerning a particular child." *Id.* § 152.102(8). Section 152.201(a) states that

(a)      . . . a court of this state has jurisdiction to make an initial child custody determination only if:

(1)      *this state is the home state of the child on the date of the commencement of the proceeding*, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

29

(2)    a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum . . . and:

    (A)    the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

    (B)    substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3)    all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child . . . or

(4)    no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAM. CODE § 152.201(a) (emphasis added). Under the Texas UCCJEA, "home-state jurisdiction trumps all other possible bases of jurisdiction in an initial child custody action." *In re Brown*, 203 S.W.3d 888, 891 (Tex. App.—Fort Worth 2006, no pet.).

The physical location of a child "is the central factor to be considered when determining the home state" of the child. *In re Walker*, 428 S.W.3d 212, 216 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *see also Powell*, 165 S.W.3d at 328 (holding that "in determining where a child lived for purposes of establishing home-state jurisdiction, the trial court must consider the child's physical presence in

30

a state."). On the other hand, "visitations within a state" do not suffice "to determine whether a state has become a child's 'home state' under section 152.102(7)." *In re A.S.,* No. 02-14-00301-CV, 2016 WL 1470034, at *3 (Tex. App.—Fort Worth Apr. 14, 2016, no pet.) (mem. op.) (citing *In re Marriage of Marsalis,* 338 S.W.3d 131, 136 (Tex. App.—Texarkana 2011, no pet.)).

Texas courts have held that the operative date for determining whether this state has jurisdiction under the UCCJEA is the date of commencement of the proceeding in Texas. *In re Oates*, 104 S.W.3d 571, 576 (Tex. App.—El Paso 2003, orig. proceeding) (citing *In re McCoy,* 52 S.W.3d 297, 305 (Tex. App.—Corpus Christi 2001, orig. proceeding)); *see also In re Marriage of Marsalis*, 338 S.W.3d at 135 ("Jurisdiction [under the UCCJEA] is determined based upon circumstances existing at the time suit is filed in Texas."). "Commencement" is defined as "the filing of the first pleading in a proceeding." TEX. FAM. CODE § 152.102(5).

The Family Code also addresses exclusive continuing jurisdiction for matters involving custody. Section 152.202 of the Family Code provides that

    (a)    Except as otherwise provided in Section 152.204,[22] a court of this state which has made a child custody determination consistent

---

[22] Section 152.204 of the Family Code, not applicable here, governs temporary emergency jurisdiction over a child if the child was abandoned of if jurisdiction is necessary "in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." TEX. FAM. CODE § 152.204(a).

with Section 152.201 or 152.203[23] has exclusive continuing jurisdiction over the determination until:

(1)     a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2)     a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

(b)     A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 152.201.

*Id.* § 152.202; *see also id.* § 152.102(3) (defining "child custody determination" to mean "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child" and stating that term "includes permanent, temporary, initial, and modification orders").

---

[23]     Section 152.203 of the Family Code, titled "Jurisdiction to Modify Determination" and not applicable here, pertains to a Texas court's modification of a child custody determination made by a court of another state.  TEX. FAM. CODE § 152.203. *Compare with* TEX. FAM. CODE § 152.206(a) ("[A] court of this state may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter.").

"[E]xclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present." *Cortez*, 639 S.W.3d at 307 (quoting *In re Forlenza*, 140 S.W.3d 373, 379 (Tex. 2004) (observing that "jurisdiction continues until the court determines that there is not a significant connection with Texas *and* that substantial evidence concerning the children's care, protection, training, and personal relationships is no longer available here") (citing TEX. FAM. CODE § 152.202(a)(1)) (emphasis in original). Even if the child acquires a new home state, "the state that made the initial child custody determination retains exclusive continuing jurisdiction 'so long as the general requisites of the "substantial connection" jurisdiction provisions are met.'" *Cortez*, 639 S.W.3d at 307 (quoting *In re Tieri*, 283 S.W.3d 889, 894 (Tex. App.—Tyler 2008, orig. proceeding)). "The state that made the initial child custody determination 'is the sole determinant of whether jurisdiction continues.'" *Id.*[24]

---

[24] Like Texas, Louisiana has adopted the UCCJEA, and its provisions are similar to the provisions in the Texas UCCJEA. *See* LA. STAT. ANN. § 13:1801–1802. As with the Texas UCCJEA, the Louisiana UCCJEA provides "the exclusive jurisdictional basis for making a child custody determination" by a Louisiana court, and it prioritizes "home-state" jurisdiction over any other bases of jurisdiction. *See* LA. STAT. ANN. § 13:1813; *see also State ex rel. A.U.M.*, 62 So. 3d 185, 188 (La. Ct. App. 2011) (stating home-state status has priority over other grounds UCCJEA identifies as basis for jurisdiction over child in interstate custody litigation).

## C. The Home State Analysis

The threshold issue in our review is whether Texas was C.J.S.'s home state when Victoria filed her SAPCR in Texas in March 2021, thus conferring jurisdiction on the trial court to make an initial custody determination over C.J.S. Section 152.102(7) defines "home state" as

> [T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent.* A period of temporary absence of a parent or a person acting as a parent is part of the period.

TEX. FAM. CODE § 152.102(7) (emphasis added). C.J.S. was less than six months old when Victoria filed the SAPCR in March 2021. Thus, for purposes of our home state analysis, we must determine "the state in which C.J.S. lived from birth with a parent or a person acting as a parent." *Id.* § 152.102(7). And we must consider any "period of temporary absence of a parent or a person acting as a parent [as] part of the period." *Id.; see also In re K.Y.*, 273 S.W.3d 703, 707 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding children's "frequent" visits to Oklahoma while maintaining home and possessions in Texas "[did] not establish that the children moved from Texas" for purposes of home state determination).

In conducting our home state analysis, we do so in keeping with the language of the UCCJEA's home state provision, which focuses on where the child "lived"

34

with a parent. *See* TEX. FAM. CODE § 152.102(7). As the Texas Supreme Court explained in *Powell v. Stover*, in determining where a child "lived" with a parent, our inquiry is not "based on the parties' subjective intent" concerning residence or domicile. 165 S.W.3d at 326 (noting that a "test for 'residence' or 'domicile' typically involves an inquiry into a person's intent."). The word "lived" as used in the statute, "strongly connotes physical presence." *Id.* ("We think it significant that the Legislature chose the word 'lived' as opposed to 'resided' or 'was domiciled.'"). Thus, for purpose of our home state analysis, it is the "child's physical location" that lies at the center of our analysis. *Id.* Keeping this central focus in mind, we turn to the evidence presented to the trial court on this threshold jurisdictional question.

The trial court held it had jurisdiction over the matter because Texas is C.J.S.'s home state. The trial court issued Findings of Fact supporting its jurisdictional ruling finding that C.J.S. was born in Texas, and lived exclusively in Texas for the first five weeks of his life with Victoria, who was a Texas resident; C.J.S. was covered though Texas Medicaid and had doctors in Texas; C.J.S. was four months old[25] when the Texas Action was first filed and had been "physically present" in Texas with Victoria more days of his life than he was physically present with Zach in Louisiana; any absences from the State of Texas before suit was filed were merely "temporary

---

[25] C.J.S. was born on December 1, 2020, and the Texas Action was filed on March 15, 2021.

absences;" and substantial evidence was available in the State of Texas regarding C.J.S.'s "care, protection, training, and personal relationships." We defer to a trial court's findings of fact if the findings are supported by sufficient evidence. *In re T.D.L.*, 621 S.W.3d 346, 352 (Tex. App.—San Antonio 2021, no pet.).

The following evidence was presented to the trial court when it made its jurisdictional ruling that Texas was C.J.S.'s home state. C.J.S. was born in Webster, Texas on December 1, 2020. Victoria received pre-natal care in Texas, and after his birth, C.J.S. saw a pediatrician in League City, Texas. C.J.S. lived with Victoria in Texas during the first five weeks of his life, receiving his first set of vaccinations and attending at least one well-child doctor's appointment in Texas. In January 2021, when C.J.S. was about five weeks old, Victoria began to travel back and forth to Louisiana, taking C.J.S. with her, so she could exercise possession of her older son J., who lived in Louisiana. Victoria was breastfeeding C.J.S., so she took C.J.S. with her on her visits to Louisiana. Victoria has a temporary place in Louisiana where she stays when she visits J. She considers her permanent residence to be in Rosenberg, Texas, where she has resided "since March of 2020."

Victoria registered C.J.S. with Medicaid in Texas. C.J.S. was covered by his father's health insurance in Louisiana. As of the date of the hearing on Zach's Plea—April 5, 2021—C.J.S. had spent more than half of his life in Texas. C.J.S. lived in Texas all of December 2020, and he was present in Texas (1) twelve days

36

in January 2021; (2) ten days in February 2021; (3) eight days in March 2021; and (4) all of April 2021 (through the date of the hearing). C.J.S. remained in Victoria's sole care until June 24, 2021, when Zach took him to Louisiana against Victoria's will.

Zach testified that he filed his suit in Louisiana in March 2021, and that Victoria was served with the Louisiana Action on March 10, 2021 at her residence in Abbeville, Louisiana. The last time he saw Victoria in person was on March 4, 2021, at her home in Texas where she lived with C.J.S. To Zach's knowledge, Victoria had resided at her address in Texas for six months by time of the April 5, 2021 hearing.

In light of this evidence, we conclude that Texas was C.J.S's home state when Victoria filed the Texas Action in March 2021, and that the trial court did not err in exercising jurisdiction under the UCCJEA.

Zach argued during oral argument that the UCCJEA does not require that the home state be the state in which the child was born. We agree. "The *place of birth* is not the relevant consideration. Instead, we look to 'the State in which the child lived *from* birth with [a parent or person acting as a parent].'" *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012) (orig. proceeding) (citation omitted) (emphasis in original). The evidence was undisputed that C.J.S. was born in Texas and that he lived there exclusively the first five weeks of his life, after which time he began to

travel back and forward to Texas with Victoria so that she could visit her other son. That Victoria may have had a residence in Louisiana or that she traveled to and from Louisiana does not change the outcome. For purposes of our home state analysis involving a child younger than six months of age, the statute dictates that we consider any "period of temporary absence of a parent or a person acting as a parent [as] part of the period." *See* TEX. FAM. CODE § 152.102(7).

In his brief, Zach concedes that Texas was C.J.S.'s home state "at one time," but argues that Victoria and C.J.S. "abandoned" Texas as the home state, returning to Louisiana, and that C.J.S. had no home state when Zach filed his Louisiana suit on March 4, 2021.[26] During oral argument, however, Zach argued that Louisiana had always been C.J.S.'s home state and that Victoria's visits to Texas, even the five-week period beginning with her giving birth to C.J.S. in Texas, were mere "temporary absences'" that did not count against the determination that Louisiana was the home state. *See* TEX. FAM. CODE § 152.102(7) ("A period of temporary absence of a parent or a person acting as a parent is part of the [home state calculation] period.").

Section 152.107 does not support Zach's argument. Section 152.107 defines "home state" as

---

[26] Zach argued in his Motion to Set Aside that Louisiana was Zach's home state when suit was filed in the Louisiana court or, in the alternative, that neither Texas nor Louisiana was C.J.S.'s home state.

38

> [T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent.* A period of temporary absence of a parent or a person acting as a parent is part of the period.

TEX. FAM. CODE § 152.102(7) (emphasis added). Zach's argument that we begin our home state analysis with Victoria's residence in Louisiana, and that we consider her subsequent travel to Texas to give birth to C.J.S. and the following five weeks in Texas as part of Victoria's "temporary absence" from Louisiana cannot be reconciled with the statutory mandate that "[i]n the case of a child less than six months of age, the term means the state in which the child lived *from birth* with a parent or a person acting as a parent." *See id.* (emphasis added). Indeed, the Texas Supreme Court has held that a child's home state "cannot be determined before a child is born[.]" *In re Dean*, 393 S.W.3d at 747. Zach is asking us in his novel argument to do just that.[27]

---

[27] Zach argues that Victoria lived in Louisiana before C.J.S.'s birth and had "substantial" prenatal care there, advising her doctor she planned to deliver the child in Texas. But any actions Victoria may have taken or where she lived prior to C.J.S.'s birth do not factor into our home state analysis. *See In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012) (orig. proceeding) (noting home state is based on determination of where child lived from birth with parent or parental surrogate). *Cf. Waltenburg v. Waltenburg*, 270 S.W.3d 308, 317 (Tex. App.—Dallas 2008, no pet.) ("[T]he text of the UCCJEA precludes its application to unborn children."). In *Waltenburg*, the Dallas Court of Appeals rejected a reading of the UCCJEA that would allow a party to file suit before a child's birth to determine jurisdiction over a custody matter. *Id.* at 318. Doing so, the court reasoned, would "defeat the clear

The rules of statutory construction preclude us from adopting Zach's argument. We are required to presume the entire statute is intended to be effective. *See* TEX. GOV'T CODE § 311.021(2). The first two sentences of Section 152.102(7) "must be read together such that in the case of a child less than six months of age, the home state is that state in which the child lived from birth with a parent immediately before the commencement of the child custody proceeding." *In re Calderon-Garza*, 81 S.W.3d 899, 903 (Tex. App.—El Paso 2002, no pet.) (emphasis omitted). "[W]e must always consider the statute as a whole rather than its isolated provisions. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (internal citation omitted).

The court in *In re Calderon-Garza* rejected an argument similar to the one Zach makes here. In that case, the mother received all her prenatal care in Mexico, but the child was born in Texas. 81 S.W.3d at 901. The mother claimed that the child's home state was in Mexico because she only went to Texas to give birth and

_____

purpose underlying the legislature's enactment of the UCCJEA—to prioritize home-state jurisdiction." *Id.* However, in *Berwick v. Wagner*, 336 S.W.3d 805, 815–16 (Tex. App.—Houston [1st Dist.] 2011, pet. denied), we clarified that (1) in cases where the pre-birth suit and the child's home state are the same, UCCJEA petitions can be filed pre-birth with any jurisdictional analysis reserved for after birth, and (2) Texas law expressly recognizes that some UCCJEA cases, such as parental-termination proceedings, can be filed before a child is born.

to obtain financial assistance from her parents and intended to return to Mexico after the birth. *Id.* at 903. As Zach contends here, the mother claimed that her visit to Texas, during which her child was born, "was merely a 'temporary absence' from her residence in Mexico" and that she did not actually live in Texas as the term is used in the Family Code's definition of "home state." *Id.* The court of appeals disagreed, holding that even if the mother "deems herself temporarily absent from her domicile in Mexico, the child cannot be considered temporarily absent because he was never physically present in Mexico" prior to commencement of the father's suit. *Id.* Citing a San Antonio appellate decision, the court stated, "the temporary absence provision of Section 152.102(7) cannot be construed to include periods before the child was first present in the claimed home state." *Id.* (citing *In re Lambert*, 993 S.W.2d 123, 129 (Tex. App.—San Antonio 1999, orig. proceeding) (observing child's "presence in Texas for the first week of her life was not an 'absence' from Virginia since she had never been there")); *see also Canales v. Riquelme*, No. 13-09-080-CV, 2010 WL 4657951, at *4 (Tex. App.—Corpus Christi–Edinburg Nov. 18, 2010, no pet.) (mem. op.) ("[Mother's] residency is of no import in determining the trial court's jurisdiction over the initial custody matter; rather it is the physical presence of the children that is determinative.").

Here, the jurisdictional evidence established that C.J.S. "lived from birth with a parent" in Texas, and that Victoria's subsequent, periodic temporary absences from

Texas to visit her son J. in Louisiana were "temporary absences" for purposes of the UCCJEA.

**D.     Jurisdiction Evidence**

Zach asserts that in reviewing the Texas court's rulings on his Plea to the Jurisdiction and the denial of his Motion to Reconsider, we may consider jurisdictional evidence offered at the April 5, 2021 hearing on his Plea, the September 8, 2021 re-convened hearing on his Plea, and the documents attached to Zach's combined post-judgment motions, including a transcript of the Louisiana jurisdictional hearing held on June 17, 2021, and the mandamus record previously filed in this Court.

For purposes of our *de novo* review, we may consider only the testimony and the exhibits that were admitted into evidence when the trial court ruled on Zach's Plea to the Jurisdiction and his Motion to Reconsider. *See Shahin*, 527 S.W.3d at 487 ("We review the actions of the trial court based upon the materials before it at the time it acted."). During the May 16, 2022 hearing on Zach's Motion to Reconsider, the trial court also considered Zach's Motion to Set Aside the court's Final Order based on the *Craddock* factors and his alternative Motion for New Trial. At Zach's request, the trial court took judicial notice of the record in the case, including transcripts of the trial court's jurisdictional hearings on April 5, 2021 and

September 8, 2021, as well as this Court's mandamus record and the transcript of the June 17, 2021 Louisiana court hearing.

Both parties agreed that the trial court take judicial notice of these documents. But while a "the trial court can take judicial notice of the *existence* of certain documents in its records," it "'may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file.'" *Kenny v. Portfolio Recovery Associates, LLC*, 464 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (emphasis in original) (quoting *Guyton v. Monteau,* 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). Texas Rule of Evidence 201, which governs judicial notice, limits the court's judicial notice to a fact that either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). "A document's contents do not achieve a cannot-reasonably-be-questioned status simply by appearing in the trial court's file." *Gonzalez v. Gonzalez*, 679 S.W.3d 221, 231 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Kenny*, 464 S.W.3d at 34). Moreover, it is not sufficient to take judicial notice of a hearing or trial transcript for purposes of relying on that testimony in a later proceeding. "In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into

43

evidence." *Guyton*, 332 S.W.3d at 693*; see also Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 161 S.W.3d 531, 539–40 (Tex. App.—San Antonio 2004, pet. denied) ("[T]he trial court cannot take judicial notice of testimony from a previous proceeding at a subsequent proceeding unless the testimony is admitted into evidence at the subsequent proceeding.").

Thus, while during the May 16, 2022 hearing, the trial court agreed to judicially notice the existence of the record in the case and some documents attached to Zach's combined post-judgment motion, to the extent those documents were not *admitted* into evidence, we may not consider them for purposes of our jurisdictional analysis. The same is true with respect to the affidavits attached to Zach's Motion to Set Aside. While Zach attached his affidavit and the affidavit of his mother to his Motion to Set Aside, which the trial court heard on the same day it considered Zach's Motion to Reconsider the denial of his plea, Zach did not offer those affidavits into evidence, nor did he offer them in support of any jurisdictional arguments.[28] As he explained at the hearing on his Motion to Set Aside, Zach attached the affidavits to his motion in support of the first element of the *Craddock* analysis, and he did not

---

[28]     Even though the affidavits and documents attached to Zach's Motion to Set Aside were not admitted into evidence, the parties agreed that the trial court could consider them for the first element of the *Craddock* analysis in ruling on Zach's Motion to Set Aside, and the trial court agreed to do so. *See Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex. 1984) (holding affidavits may be considered in *Craddock* analysis, stating, "It is sufficient that the movant's motion and affidavits set forth facts which, if true, would negate intentional or consciously indifferent conduct.").

44

offer them into evidence. We thus decline to consider such evidence in evaluating the trial court's ruling on Zach's Plea to the Jurisdiction and his Motion to Reconsider.

## E. Substantial Conformity with the UCCJEA

Zach argues that because he filed the Louisiana Action first, and the Louisiana court was authorized to exercise jurisdiction based on "significant connections" under the UCCJEA, the Texas trial court erred in exercising jurisdiction. He argues that the Louisiana court had not deferred its jurisdiction to Texas as a more appropriate forum and the Texas court was aware, in September 2021 when it assumed jurisdiction, that Louisiana had already issued a final custody order concerning C.J.S.[29] Zach argues that pursuant to Section 152.206(a) of the Family Code, the trial court should have declined jurisdiction and granted his Plea. We disagree.

> Section 152.206(a) of the Family Code provides that a court
>
> may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction *substantially in conformity* with this chapter . . . .

*Id.* § 152.206(a) (emphasis added). This provision, also known as the "simultaneous proceeding" provision, is intended "to deal with situations where a Texas court and

_____

[29] That final order, dated August 2, 2021, was later vacated in the Second Louisiana Action.

the court of another state are 'both legitimately exercising custody jurisdiction at the same time.'" *In re C.H.*, 595 S.W.3d 272, 278 (Tex. App.—Amarillo 2019, no pet.) (citing *In re J.P.L.*, 359 S.W.3d 695, 710 (Tex. App.—San Antonio 2011, pet. denied)). Significantly, a simultaneous-proceedings problem arises only when there is no home state. *Id*. (citing TEX. FAM. CODE § 152.206 cmt.).

Under the Texas UCCJEA, "home-state jurisdiction trumps all other possible bases of jurisdiction in an initial child custody action." *In re Brown*, 203 S.W.3d at 891. Thus, if Texas is the home state of the child, no other state can legitimately exercise jurisdiction "substantially in conformity with the UCCJEA." *In re A.B.G.*, No. 09-11-00545-CV, 2013 WL 257311, at *4 (Tex. App.—Beaumont Jan. 24, 2013, no pet.) (mem. op.); *see also In re C.H.*, 595 S.W.3d at 278 ("Since Texas is the home state of [the child], the Indiana court could not have exercised jurisdiction in substantial conformity with the UCCJEA."). As the comment to Section 152.206(a) explains, "[i]f there is a home state, there can be no exercise of significant connection jurisdiction in an initial child custody determination and, therefore, no simultaneous proceedings." TEX. FAM. CODE § 152.206 cmt.; *see also In re E.K.N.*, 24 S.W.3d 586, 592 (Tex. App.—Fort Worth 2000, no pet.) ("Because it is undisputed that Texas qualifies as the home state, the Los Angeles County Superior Court could not have exercised jurisdiction in substantial conformity with Chapter 152."); *In re Burk,* 252 S.W.3d 736, 741 (Tex. App.—Houston [14th Dist.] 2008,

46

orig. proceeding) ("Because there is a court of another state [Texas] that has jurisdiction under section 152.201(a)(1), the Colorado court does not have jurisdiction in substantial conformity with chapter 152 to make an initial child custody determination."); *accord Powell,* 165 S.W.3d at 328 (holding because Tennessee was minor's home state, Tennessee's exercise of jurisdiction was "substantially in accordance with" Texas' UCCJEA).

On September 8, 2021, when the Texas trial court held that Texas was the home state of the child and it exercised jurisdiction over the case, no court had made a home state determination. The Louisiana trial court, in earlier exercising jurisdiction over the case, never made an initial home state analysis. It neither determined that Louisiana was the home state of the child or that there was no home state. Rather, the Louisiana trial court exercised jurisdiction based solely on its conclusion that Victoria had "significant contact with the State of Louisiana." The Louisiana trial court stated during a June 17, 2021 hearing on Victoria's Exceptions contesting the court's jurisdiction:

> I'm satisfied that you have significant contact with the State of Louisiana. You had a residence here, you obviously visit your child [J] on a regular schedule. Your child that is in question [C.J.S.] is on Louisiana health insurance, insured through Louisiana. So you have significant contact and the Court has jurisdiction[.][30]

---

[30] On August 5, 2021, Victoria unsuccessfully appealed the Louisiana trial court's denial of her jurisdictional challenge to the Louisiana Third Circuit Court of Appeal and ultimately to the Supreme Court of Louisiana. Although the Court of Appeal

Before a court can exercise "significant connection jurisdiction" under the UCCJEA, it must first determine that another court does not have home state jurisdiction or that the court with home state jurisdiction declined jurisdiction because the significant connection court is a more appropriate forum.[31] *See* TEX. FAM. CODE §§152.201(1), (2). The Louisiana trial court did not undertake this analysis before the Texas SAPCR was filed in March 2021, or before the trial court ruled on Zach's Plea to the Jurisdiction in September 2021 and held Texas was the child's home state.[32] The Louisiana court therefore did not exercise jurisdiction over

---

denied Victoria's writ without opinion, Chief Judge Cooks wrote a dissenting opinion stating that the Texas court "clearly ha[d] jurisdiction over this child," further noting that the Louisiana trial court had applied the wrong legal standard and failed to comply with mandatory statutory provisions requiring it to confer with the trial court, who had attempted multiple times to do so without success. *See McNeil v. Stern*, 21-00557, 3 (La. App. 3 Cir. 9/20/21) (Cooks, C.J., dissenting). Chief Justice Cooks wrote that the Louisiana trial judge had

> [*B*]*ased subject matter jurisdiction solely on the notion of "significant contacts"* which is not the proper legal standard under the present UCCJEA. (Even if this were the applicable standard, I believe the record does not support his conclusion.) The majority engages in the same error.

*Id.* (emphasis in original). He concluded, "The [Louisiana] trial court could not exercise jurisdiction over this minor child whose home state is in Texas." *Id.* at 1.

[31] The court must also determine whether "the child and the child's parents, or the child and at least one party or a person acting as a parent, has a significant connection with the state other than mere physical presence" and "substantial evidence is available in the state concerning the child's care, protection, training and personal relationships." *See* TEX. FAM. CODE § 152.201(2).

[32] Zach conceded during oral argument that the Louisiana trial court did not address home state jurisdiction.

C.J.S. "substantially in conformity" with the UCCJEA, and the Texas trial court did not abuse its discretion by exercising jurisdiction over C.J.S.. *See In re C.H.*, 595 S.W.3d at 278 (explaining that if Texas is the home state, another state cannot be exercising jurisdiction "in substantial conformity" with the UCCJEA).

We further acknowledge the Texas trial court's repeated efforts to confer with the Louisiana trial court judge on this matter to no avail. In her Findings of Fact issued after the final trial, the Texas trial court judge identified seven specific attempts she made to confer with the Louisiana court, noting she had made other attempts before she began to keep track of the date and time of each attempt, but the Louisiana trial court never returned the calls. While the Louisiana court's refusal to confer does not resolve the jurisdictional inquiry, the failure of the trial court judge to confer, as mandated by the UCCJEA, was a failure of the court to act in conformity with the UCCJEA.[33] *See* TEX. FAM. CODE § 152.206(b). Both the Texas

---

[33] Victoria appealed the Louisiana Court's order on her exception for lack of jurisdiction to the Louisiana Third Circuit Court of Appeal. A divided panel denied supervisory writ review on September 20, 2021. In his written dissent, Chief Judge Cooks wrote that the Louisiana trial court judge had complicated matters by ignoring the mandatory directives of the UCCJEA and refusing to confer with the trial court judge in Texas. *McNeil v. Stern*, 21-00557, 4 (La. App. 3 Cir. 9/20/21) (Cooks, C.J., dissenting). The Supreme Court subsequently denied Victoria's writ of review. Judge Griffin wrote a concurrence, with three other justices joining, in which he expressed his agreement with Chief Judge Cooks that the UCCJEA and its provisions are mandatory in matters of child support and jurisdiction. He explained that "the trial court was required . . . to communicate with the Texas court which did its part in staying its proceedings, made several attempts to contact the trial court, and was unfortunately ignored. Justice Griffin concluded by noting that

and the Louisiana versions of the UCCJEA require judges who are involved in simultaneous custody proceedings to confer.  TEX. FAM. CODE § 152.206(b); LA. STAT. ANN. § 13:1818(B).[34]

## F.    The Unjustifiable Conduct Argument

Last, Zach argues that even if we conclude that Texas is C.J.S.'s home state, the Texas trial court should have declined to exercise jurisdiction under Section 152.208 of the Texas Family Code, because Victoria engaged in unjustifiable conduct in securing the court's jurisdiction.  Zach focuses on Victoria's action in leaving Louisiana with C.J.S. in March 2021, after she was served with the Louisiana Action and the court's temporary restraining order.  He argues that "Victoria's presence in Texas with the child in violation of a valid Louisiana order" imposed a mandatory obligation on the Texas court to decline jurisdiction.

---

"we owe the same respect to Texas courts that we would expect them to show Louisiana courts." *McNeil v. Stern*, 326 So.3d 883, *1 (La. 2021) (Griffin, J., concurring).

[34]    Section 152.206(b) of the Texas Family Code provides: "If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state.  TEX. FAM. CODE § 152.206(b).  The Louisiana UCCJEA has an identical provision.  *See* LA. STAT. ANN. § 13:1818.

Zach did not raise this argument during the first two hearings on his Plea to the Jurisdiction nor did he present any evidence at those hearings in support of his argument.[35] Even if Zach had raised the issue, he would not prevail.

Section 152.208(a) provides that a Texas court "shall decline to exercise its jurisdiction" if "a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." TEX. FAM. CODE § 152.208(a).[36] Section 152.208(a) is intended to deal with cases where parents "act in a reprehensible manner, such as removing, secreting, retaining, or restraining the child." TEX. FAM. CODE § 152.208 cmt. The section "ensures that abducting parents will not receive an advantage for their unjustifiable conduct." *Id.* Because Victoria sought to invoke the Texas court's

---

[35] In his Motion for New Trial, Zach referred to "Victoria's unjustifiable conduct in removing the child from Louisiana and misrepresenting the child's time in Texas as supporting her jurisdictional claims prior to filing the Texas suit."

[36] Section 152.208 of the Family Code provides in part:

(a) Except as otherwise provided in Section 152.204 or other law of this state, if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:

(1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;

(2) a court of the state otherwise having jurisdiction under Sections 152.201 through 152.203 determines that this state is a more appropriate forum under Section 152.207; or

(3) no court of any other state would have jurisdiction under the criteria specified in Sections 152.201 through 152.203.

TEX. FAM. CODE § 152.208.

jurisdiction, it is her conduct that a court examines under the Section 152.208 standard. *In re S.L.P.*, 123 S.W.3d 685, 689 (Tex. App.—Fort Worth 2003, no pet.).

The only allegation of wrongdoing pertains to Victoria's action in taking C.J.S. to Texas in early March 2021, after she was served with the Louisiana temporary restraining order. While her actions purportedly violated the terms of the temporary restraining order, Victoria argues she believed the Louisiana court lacked jurisdiction over her or C.J.S. and that she heavily litigated that issue in Louisiana. There is no evidence that Victoria attempted to hide the Louisiana Action from the Texas trial court. Indeed, she disclosed the Louisiana Action in the affidavit attached to her original petition, and the Louisiana proceedings were discussed in the Texas Action during the hearings on April 5, 2021 and September 8, 2021, and during the trial on March 10, 2022.

There is also no allegation, and indeed no evidence that, Victoria "secret[ed], retain[ed], or restrain[ed]" C.J.S.—that is, there is no evidence she abducted C.J.S. or prevented Zach from seeing the child. To the contrary, Victoria testified that when she allowed Zach to visit C.J.S. in Texas, Zach absconded to Louisiana with C.J.S. Zach also knew of C.J.S.'s and Victoria's whereabouts. He did not dispute that C.J.S. lived with Victoria in Texas for five weeks following his birth through January 2021, or that Victoria had a house in Rosenberg, Texas, where C.J.S. stayed with Victoria. While Zach argues that Victoria resided in Louisiana, the trial court

52

heard evidence that Victoria traveled back and forward between the two states given her custody obligations over J. and M.G.

In short, there is no evidence supporting Zach's allegations that Victoria engaged in the type of unjustifiable conduct contemplated by Section 152.208. *See, e.g., In re S.L.P.*, 123 S.W.3d at 689 (holding appellant engaged in unjustifiable conduct because she failed to apprise the trial court that she had participated in previous court proceedings regarding custody, that her parental rights had been terminated, and that she had refused to return children to the father for nearly two years in violation of a standing custody order); *In re Carpenter*, 835 S.W.2d 760, 762 (Tex. App.—Amarillo 1992, no writ) (finding father engaged in unjustifiable conduct because he abducted child, removed child from state, and kept child from mother for four years until father and child were located living in Texas). We thus conclude the trial court did not abuse its discretion in exercising jurisdiction and rejecting Zach's arguments under Section 152.208.

We overrule Zach's second and third issues.

**The Default Judgment**

In his first issue, Zach argues the trial court abused its discretion in refusing to grant his Motion to Set Aside the default Final Order. He argues that under the *Craddock* standard, the trial court was required to set aside the Final Order and grant him a new trial.

## A.    Standard of Review and Applicable Law

The seminal case that establishes the proof a defaulting party must establish to obtain a new trial is *Craddock v. Sunshine Bus Lines, Inc.,* 133 S.W.2d 124 (Tex. 1939). Under *Craddock*, a default judgment must be set aside and a new trial granted if

> (1) the failure to answer or appear was not intentional or the result of conscious indifference but was rather due to a mistake or accident, (2) the defendant sets up a meritorious defense, and (3) the granting of a new trial would not result in delay or otherwise injure the plaintiff.

*In re R.R.*, 209 S.W.3d 112, 114–15 (Tex. 2006) (citing *Craddock*, 133 S.W.2d at 126). We review a trial court's denial of a motion for new trial for abuse of discretion. *B. Gregg Price, P.C. v. Series 1 - Virage Master LP*, 661 S.W.3d 419, 423 (Tex. 2023).

Under the first *Craddock* element, the movant must "set forth facts that negate intentional or consciously indifferent conduct because of a mistake or accident[.]" *Freeman v. Pevehouse*, 79 S.W.3d 637, 644 (Tex. App.—Waco 2002, no pet.) (citing *Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex. 1984)). To determine whether the movant acted intentionally or with conscious indifference, a trial court focuses on the knowledge and acts of the defaulting party. *Director, State Emp. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994). A movant satisfies its burden under the first *Craddock* element "when the factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the

factual assertions are not controverted by the plaintiff." *In re R.R.*, 209 S.W.3d at 114–15. When, as here, the trial court conducts an evidentiary hearing and the party who obtained the default judgment controverts the defaulting party's allegations of mistake or accident, the trial court must "make an essentially factual inquiry into the acts and knowledge of the defaulting defendant to determine whether his failure to answer was intentional." *Gotcher v. Barnett*, 757 S.W.2d 398, 401 (Tex. App.— Houston [14th Dist.] 1988, no writ) (citation omitted); *see also Strackbein*, 671 S.W.2d at 38–39 (noting affidavits may be considered in *Craddock* analysis); *Wal-Mart Stores, Inc. v. Kelley*, 103 S.W.3d 642, 644 (Tex. App.—Fort Worth 2003, no pet.) (noting movant "must either submit competent evidence to support the *Craddock* elements *OR* attach *affidavits* to its motion") (emphasis in original).

*Craddock* is applicable to the entry of default judgments in SAPCRs. *In re R.R.*, 209 S.W.3d at 114–15 (applying *Craddock* standard in parental termination case); *Comanche Nation v. Fox*, 128 S.W.3d 745, 749 (Tex. App.—Austin 2004, no pet.) ("Texas appellate courts have routinely applied the *Craddock* test to SAPCRs."); *In re A.P.P.,* 74 S.W.3d 570, 573 (Tex. App.—Corpus Christi 2002, no pet.) (applying *Craddock* in appeal of default judgment where mother was removed as sole managing conservator of child); *Lowe v. Lowe,* 971 S.W.2d 720, 722-23

(Tex. App.—Houston [14th Dist.] 1998, pet. denied) (applying *Craddock* in appeal

of default judgment that named father sole managing conservator of children).[37]

## B. The Hearing

Five witnesses testified during the hearing on Zach's Motion to Set Aside.

### 1. Zach's Trial Counsel

Zach's former trial counsel testified that he was licensed to practice law in

Texas in 1999, and that he practices predominantly family law. Zach hired him to

represent him in this SAPCR case. After reviewing the Texas trial court's

jurisdiction, Zach's counsel opted not to file a special appearance and he filed a plea

challenging subject matter jurisdiction instead. He understood that by filing the plea,

Zach had made an appearance in the Texas court.

According to Zach's counsel, he and Zach's mother, Michele, discussed on

more than one occasion that Zach would waive his subject matter jurisdiction

challenge if he appeared before the Texas court. He also told Michele that he could

not offer anything into evidence without waiving Zach's jurisdictional challenge.

In an email exchange with Michele, in response to her question as to whether Zach

---

[37] *But see In re T.F.*, No. 02-18-00299-CV, 2019 WL 2041790, at *3 n.6 (Tex. App.— Fort Worth May 9, 2019, no pet.) (mem. op.) (noting that several intermediate appellate courts "have noted that the *Craddock* test, specifically the second prong, is ill-suited to SAPCR cases because it fails to expressly consider the best interest of the affected children, which is the overriding consideration in any SAPCR determining conservatorship, possession, and access." (citing TEX. FAM. CODE § 153.002). However, the state's courts "continue to be bound by the test." *Id.*

should appear at trial, Zach's counsel answered, "No need to appear. As a matter of fact, if we do appear, then we will be submitting to the Court's jurisdiction." Zach's counsel stated in the email exchange that "[e]ntering into any evidence would waive our right to object to the jurisdiction."

Asked whether he made a mistake in analyzing the law and concluding Zach would waive his jurisdictional challenge by appearing at trial, Bosker testified, "I would agree it was a mistake not appearing and that I wish that we had appeared to renew and re-urge our objections that Texas was not the home state, Louisiana was and, again, to re-urge my objection with regards to the subject matter jurisdiction." He testified that he believes it is correct that Zach "could have participated in the temporary order hearing on the final trial without waiving his challenge to the Court's subject matter jurisdiction." He testified he "may have mistakenly applied the law."

Zach's counsel conceded that he advised Zach not to participate in the temporary order hearing because of his belief that if Zach participated, he would waive his right to challenge the trial court's subject matter jurisdiction. He testified, "I, at one time, did have that belief and understanding, correct." Based on that understanding, he also advised Zach not to appear at the final trial. Zach's counsel acknowledged that he "may have mistakenly applied the law." Asked whether Zach

made a mistake in relying on his advice about waiver of subject matter jurisdiction, Zach's counsel responded, "Zach made a mistake."

At times, Zach counsel's testimony was contradictory.  He first testified that he "didn't know" in September 2021 whether subject matter jurisdiction could be waived.[38]  But when asked whether he learned, after entry of the Final Order, that subject matter jurisdiction could not be waived, he testified, "No, because I knew that it could not be waived. I also was under the belief that it could be appealed at any time."  He testified that his understanding is that a party cannot waive subject matter jurisdiction.

On cross-examination, Zach's counsel testified that after this Court denied Zach's application for a writ of mandamus in January 2022, he conducted further analysis on jurisdiction and still "determined that [he and Zach] would not appear at the final trial."

### 2.    Zach

Zach testified that he filed a SAPCR suit in Louisiana in March 2021.  That same month, he was served with the Texas Action. Zach testified he is challenging Texas jurisdiction because both he and Victoria lived in Louisiana when he filed

---

[38]    Zach's counsel conceded that he stated during the Temporary Orders hearing that he "ha[d] strong concerns that by appearing and making argument at a temporary orders hearing that [Zach] would be submitting [him]self to the Court's jurisdiction which is at issue here."  He thus told the trial court that he and Zach would not participate in the hearing.

suit. He understood that the August 2, 2021 Louisiana order was a final order regarding custody of C.J.S.

Zach testified that his trial counsel told him that participating in the Texas lawsuit "would waive my rights to an appeal for jurisdiction in Texas and Louisiana." Zach testified that he did not participate in the temporary order hearing because his counsel told him it would "waive my objection to jurisdiction, so I had no reason to doubt him." Similarly, Zach testified that he did not participate in the trial in March 2022 based on his counsel's advice not to appear. In light of his counsel's advice, Zach believed that appearing at trial "would waive [his] right to object [to] Texas jurisdiction." Zach testified that it was always his intent to challenge Texas jurisdiction because he and Victoria lived in Louisiana and there was a SAPCR in the Louisiana court, which found it had jurisdiction. He testified there was no reason for him not to appear at trial, other than his counsel's advice.

In his affidavit, filed in support of his Motion to Set Aside, Zach also testified that he "completely relied" on the experience, advice and judgment of his then-attorney who told him if they appeared in any proceedings or submitted evidence it would create "an appearance" and result in the waiver of Zach's right to object to jurisdiction in any appeal. Following his attorney's advice, Zach did not appear for the March 10, 2022 trial setting, and a default Final Order was signed that day.

### 3. Michele

Michele is Zach's mother and C.J.S.'s grandmother. She testified that Zach's counsel told her they could not appear for the Temporary Orders hearing "because we already had jurisdiction in Louisiana and it would possibly jeopardize that jurisdiction basically admitting Texas had a say so. So that's what he told us, and that's what we did." She testified she had several conversations, some via email, with Zach's counsel concerning the potential waiver of jurisdiction, and that she relayed the conversations to Zach. She said Zach did not participate in the Temporary Orders hearing because of counsel's advice.

### 4. Victoria

Victoria testified about attorneys' fees. She testified that she and her counsel appeared twice for a final trial prior to the default hearing on March 10, 2022. She testified briefly about C.J.S.'s whereabouts and her living arrangements with him until Zach took him to Louisiana in June 2021. She testified that she is not "able to afford attorney's fees for a new trial in this matter." She also testified that she "participate[d] in the Louisiana [Action] even though [she] was objecting to jurisdiction there," and that she was still actively involved in challenging the orders of the Louisiana court.

### 5. Victoria's Attorney

The attorney who represented Victoria in the Louisiana litigation testified about the status of the Louisiana proceedings as of the time of the hearing. She testified they were waiting for an ad hoc judge to be appointed in response to Victoria's Motion to Recuse the Louisiana trial court judge from the case. In addition, they were trying to annul the Louisiana court's August 2, 2021 final order, because (1) the Louisiana court lacked subject matter jurisdiction, and (2) the order was rendered in violation of a stay order. She testified that because there is no basis for the judgment, which is null, there is no basis for an appeal in Louisiana. She testified Victoria filed a petition to annul the judgment "because that was the only permissible attack[.]" She testified they were not able to file a motion for new trial because the judgment was not "a valid final judgment and thus is not appealable."

At the conclusion of the hearing, the trial court took Zach's Motion to Set Aside under advisement. Later, on May 23, 2022, the court signed an order denying the motion.

## C. Analysis

It is undisputed that Zach failed to appear for trial on March 10, 2022, and that his actions were deliberate. Zach argues, however, that the trial court erred in denying his Motion to Set Aside because his actions were justified. He argues his failure to appear was based on his attorney's mistaken belief that appearing at trial

would result in waiver of his objection to the Texas court's jurisdiction, and that such a "mistake of law" can satisfy the first *Craddock* element.

Victoria argues that because Zach's failure to appear at trial was intentional and purposeful, he cannot satisfy the first *Craddock* prong requiring proof of mistake or accident. She argues that cases involving justification based on mistakes of law are cases involving *action* by the defaulting party, and not deliberate inaction like the failure to appear at trial. Victoria further argues that given the testimony from Zach's counsel that he knew subject matter jurisdiction cannot be waived, "the only conclusion that can be reached . . . is that his failure to appear along with his client's decision not to appear was an intentional act." She argues that because Zach's counsel testified he "was under the belief that [subject matter jurisdiction] could be appealed at any time," Zach's counsel "intentionally didn't appear because he planned to appeal. This is clearly intentional conduct and a legal strategy, not a 'mistake.'"[39]

Zach's counsel's testimony was inconsistent during the hearing.[40] Although he first testified that he knew subject matter jurisdiction could not be waived and

---

[39]  In the hearing on the Motion to Set Aside, Zach's trial counsel conceded that Zach's failure to attend trial was a "mistake in [his] strategy."

[40]  When contradictory evidence is offered in support of a *Craddock* motion, it is within the trial court's discretion to determine which facts to believe. *See Lynch v. Lynch*, 540 S.W.3d 107, 122 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (noting if during evidentiary hearing on motion for new trial, party that obtained default

could be appealed at any time," he later testified that he advised Zach to leave the temporary order hearing and to forego appearing at the final trial because if Zach participated, he would waive his right to challenge the court's subject matter jurisdiction. He acknowledged admitting he made a mistake in analyzing the law regarding subject matter jurisdiction.

"Failing to file an answer intentionally or due to conscious indifference means 'the defendant knew it was sued but did not care.'" *In re R.R.*, 209 S.W.3d at 115 (quoting *Fidelity and Guar. Ins. Co. v. Drewery Const. Co., Inc.,* 186 S.W.3d 571, 576 (Tex. 2006)). "[S]ome excuse, although not necessarily a good one, [however] will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *Id.* at 115 (citing *Fidelity*, 186 S.W.3d at 576); *see also Rojas v. Scharnberg*, No. 01-09-01039-CV, 2011 WL 941616, at *5 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.) ("Even a slight excuse is sufficient to satisfy the first prong of *Craddock*." (citing *P & H Transp., Inc. v. Robinson*, 930 S.W.2d 857, 861 (Tex. App.—Houston [1st Dist.] 1996, writ denied)).

---

judgment presents evidence to show defaulting party acted intentionally or with conscious disregard, "the question of why the defaulted party failed to answer presents a question of fact, which is resolved by the factfinder.") (quoting *Pekar v. Pekar*, No. 09-14-00464-CV, 2016 WL 240761, at *3 (Tex. App.—Beaumont Jan. 21, 2016, no pet.) (mem. op.)).

According to Zach, courts have held that a "mistake of law," such as the one here, can satisfy the first *Craddock* element. He relies on three cases, none of which is directly on point. *See Angelo v. Champion Rest. Equip. Co.*, 713 S.W.2d 96, 97 (Tex. 1986) (holding first *Craddock* requirement satisfied when answer was not filed because of mistaken belief that payment made on open account would result in dismissal and negated need for answer)[41]; *Tex. State Bd. of Pharmacy v. Martinez*, 658 S.W.2d 277, 280 (Tex. App.—Corpus Christi–Edinburg 1983, writ ref'd n.r.e.) (holding first *Craddock* prong satisfied by appellant's mistaken belief that answer filed in other suit where appellant believed venue was proper for instant suit relieved party of duty to answer instant suit)[42]; *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84–85 (Tex. 1992) (holding first *Craddock* element satisfied when bank branch

---

[41] The opinion does not indicate whether the appellant retained an attorney before failing to file an answer. *Angelo v. Champion Rest. Equip. Co.*, 713 S.W.2d 96, 97 (Tex. 1986). The court held that "Angelo's failure to answer was not caused by conscious indifference but by the belief that payment according to the agreed schedule would cause the suit to be dismissed." *Id.*

[42] Although the opinion refers to the appellant and not its attorney, we presume the appellant had counsel when it filed a motion to dismiss and appeared at a hearing on a motion to dismiss in the other county, and that it was counsel's mistaken belief "that jurisdiction for the suit was only proper in Travis County, Texas, wherein it had filed an answer in response to the suit appellee had filed there." *Tex. State Bd. of Pharmacy v. Martinez*, 658 S.W.2d 277, 280 (Tex. App.—Corpus Christi–Edinburg 1983, writ ref'd n.r.e.).

president failed to file written answer to writ because he thought freezing of subject accounts and tendering balance of accounts to court was "sufficient answer").[43, 44]

The most analogous case on which Zach relies is *Tex. State Bd. of Pharmacy v. Martinez*, but its holding appears to be limited to cases where "the failure to answer a lawsuit" is "based upon a mistaken belief that an action taken in another suit relieved the party of his duty to answer." 658 S.W.2d at 280. In *Martinez,* the appellee sued the appellant in Travis County and subsequently filed an identical suit in Hidalgo County. *Id.* at 278. The appellant filed an answer to the Travis County suit but not to the Hidalgo County suit, as he believed jurisdiction was proper only in Travis County. *Id.* After a default judgment was rendered in the Hidalgo County suit, the appellant filed an answer.

In reversing and remanding for a new trial, the court observed there is "very little authority" that addresses the failure to answer a lawsuit based on a mistaken belief that the party need not answer given an action taken in another suit. *Id.* at 280.

---

[43] The opinion lacks any indicia of whether the appellant retained an attorney before failing to file an answer. It only says, "Bank One did not file an answer because it mistakenly believed that freezing the accounts and submitting a check for the balance in the accounts to the court was a sufficient answer." *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992).

[44] *See Knie v. Piskun*, 23 S.W.3d 455, 464 (Tex. App.—Amarillo 2000, pet. denied) (observing that in *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992), "the court expressly held that a mistake of law, in contrast to ignorance of the law, *can* be sufficient to meet the accident or mistake standard set out in *Craddock*.") (emphasis in original).

The court relied on a 1982 Texas Supreme Court case where the appellant filed pleas of privilege in two suits in order to have the actions transferred from one county to another. *Id.* (citing *Guaranty Bank v. Thompson,* 632 S.W.2d 338, 339 (Tex. 1982)). The pleas of privilege were overruled and while they were on appeal, default judgments were entered in both cases. *Id.* The Supreme Court explained it was not disputed that appellant had not intentionally failed to answer, but the court did not reach the issue in reversing and remanding for a new trial. *Id.*

The court of appeals in *Martinez* also relied on a 1923 appellate decision that held that a "multiplicity of suits" should not "be tolerated to the confusion and undoing of an unoffending citizen." *Id.* (citing *Meckel v. State Bank of Barksdale,* 256 S.W. 668, 669 (Tex. App.—San Antonio 1923, no writ)). Finally, the court relied on an 1858 case that granted a new trial to a defendant who did not file an answer in a suit but instead "relied on the prayer for an injunction in another cause as a sufficient answer in this cause." *Id.* (citing *Dowell v. Winters,* 20 Tex. 793, 795 (1858)). Unlike the facts in *Martinez*, this case does not involve a failure to file an answer due to a belief that a filed answer in another case was sufficient. *Martinez* is thus inapposite.

We find *Padilla v. Hollerman Dev., L.P.*, No. 04-08-00739-CV, 2009 WL 1153324 (Tex. App.—San Antonio 2009, no pet. ) (mem. op.), a more recent case, more analogous and persuasive. In that case, the appellee sued Padilla and attempted

four times to serve him at his home. *Id.* at *1. After a Rule 106[45] motion was granted, the process server served Padilla by leaving the documents on his front door. *Id.* Padilla found the papers in the bushes outside his home and took them to his attorney. The attorney told Padilla he was not properly served and to "wait and see what happened." *Id.* The trial court entered a default judgment and Padilla filed a motion for new trial. Among other things, Padilla asserted that his attorney's conclusion that he had not been properly served was a mistake of law that satisfied *Craddock*'s first prong. *Id.* at *3. The trial court denied the motion and the court of appeals affirmed.

During the hearing on the motion for new trial, Padilla's attorney testified "he did no research regarding whether an answer was due, and that if he had, he would have filed an answer." *Id.* Based on that testimony, the trial court held Padilla did not satisfy the first *Craddock* prong. *Id.* The appellate court stated, "[N]ot every act of a defendant that could be characterized as a mistake of law is a sufficient excuse." *Id.* at *3 (quoting *Walker v. Gutierrez*, 111 S.W.3d 56, 64 (Tex. 2003)). The court continued:

---

[45]     Texas Rule of Civil Procedure 106(b) governs substituted service. TEX. R. CIV. P. 106(b). When *Padilla* was decided, a prior version of Rule 106(b) was in effect, but it makes no difference with respect to our analysis of this issue.

> In determining whether the failure to answer was not intentional or the result of conscious indifference but rather due to accident or mistake, we look to the knowledge and acts of the claimant. Generally, when the claimant relies on an attorney to file an answer, the claimant must establish that the failure to answer was not intentional or the result of the conscious indifference of either himself or his attorney.

*Id.* (internal citations omitted). Padilla argued his failure to answer the lawsuit was a mistake rather than conscious indifference, because he had acted on his attorney's recommendation. *Id.* The court of appeals disagreed, noting that a mistake of law usually results "when a party's mistake caused him to respond affirmatively, but ineffectively, to the notice." *Id.* The court held that Padilla "was properly served with notice of [the appellee's] complaint, and his mistaken reliance on his attorney's advice [did] not excuse his failure to respond in some way to the lawsuit." *Id.* at *4. Thus, the court held Padilla failed to satisfy the first *Craddock* requirement.

Zach argues that his situation is different because his failure to show up at trial was not "inaction," but rather "specific, actionable conduct following the instructions and advice of his lawyer." *See Padilla*, 2009 WL 1153324 at *3 (observing that "action rather than inaction separated satisfactory mistakes of law from those which did not excuse a default"). But taken to its logical conclusion, this would mean that any failure to appear based on an attorney's misunderstanding of the law would result in justifiable "action" sufficient to overcome the first *Craddock*

prong. That is not the standard.[46, 47] The evidence before the trial court established that Zach, relying on the advice of counsel, chose not to appear at trial because his legal strategy was to appeal and challenge the jurisdiction of the Texas trial court. On these facts, we conclude Zach did not establish he failed to appear at trial based on mistake or accident. *See id.; see also Carey Crutcher, Inc. v. Mid-Coast Diesel Servs., Inc.*, 725 S.W.2d 500, 502 (Tex. App.—Corpus Christi–Edinburg 1987, no writ) (holding attorney's mistaken belief that answer was not necessary in light of bankruptcy stay "is not the type of mistake that negates conscious indifference" and that the testimony "support[ed] the conclusion that the attorney made a conscious decision not to answer."); *21st Century Home Mortg. v. City of El Paso,* 281 S.W.3d 83, 86–87 (Tex. App.— El Paso 2008, no pet.) (holding trial court did not abuse discretion in denying motion for new trial when attorney testified he did not file answer because after reviewing original petition, he determined client was not party and he "was confused about why his client had been served").

---

[46] *Cf. Walker v. Gutierrez*, 111 S.W.3d 56, 62, 65 (Tex. 2003) (applying *Craddock* "conscious indifference" analysis in context of failure to serve adequate expert report in medical malpractice case, holding mistake of law did not excuse conscious indifference where attorney did not review expert report to ensure it complied with statutory requirements).

[47] *Compare with Nalley v. Quevedo*, No. 01-20-00400-CV, 2022 WL 1547780, at *6 (Tex. App.—Houston [1st Dist.] May 17, 2022, no pet.) (mem. op.) (holding first *Craddock* factor satisfied when attorney explained she mistakenly believed response to modification petition was due before temporary injunction hearing, which was nine days after deadline to file response).

Because we find that Zach did not satisfy the first *Craddock* element, we need not address the second or third elements. We overrule Zach's first issue.

**The Orders Regarding Conservatorship and Possession**

In his fourth issue, Zach complains of the trial court's orders, which he argues are not in the best interest of the child. He argues the trial court's orders regarding conservatorship and possession are based on insufficient evidence, ignore applicable legal presumptions, and impose restrictions that are not in the child's best interest.

## A.    Standard or Review and Applicable Law

We review a trial court's orders on possession and conservatorship for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2017, no pet.). A trial court abuses its discretion if it acts "without reference to any guiding rules or principles; in other words, [if] the act was act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

"Under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion." *Arevalo v. Fink*, No. 01-19-00822-CV, 2020 WL 5778813, *2 (Tex. App.—Houston [1st Dist.] Sept. 29, 2020, no pet.) (mem. op.) (citing *In re J.J.G.*, 540 S.W.3d 44, 55 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)). "A trial court does not abuse its discretion if it bases its decision on

70

conflicting evidence and some evidence supports its decision." *In re Barber,* 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). In considering whether the trial court abused its discretion, "we look only to the evidence before the trial court when the trial court rendered its decision." *G. R. v. Tex. Dep't of Pub. Safety*, No. 03-20-00090-CV, 2020 WL 5099772, at *1 (Tex. App.—Austin Aug. 26, 2020, no pet.) (mem. op.) (citation omitted).

Custody disputes "are inherently fact-intensive" and we "routinely defer to the fact finder in matters of credibility and demeanor[.]" *In re Vogel*, 261 S.W.3d 917, 925 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The trial court is best able "to observe the demeanor and personalities of the witnesses and [to] 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Smith v. Payandeh*, No. 01-18-00463-CV, 2019 WL 2528197, at *7 (Tex. App.—Houston [1st Dist.] June 20, 2019, no pet.) (mem. op.) (quoting *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)).

When, as here, an abuse of discretion standard applies and the trial court issues findings of fact and conclusions of law, "findings of fact and conclusions of law aid us in reviewing the propriety of the ruling by providing us with an explanation for the ruling." *In re M.J.G.*, 248 S.W.3d 753, 761 (Tex. App.—Fort Worth 2008, no pet.). We review findings of fact for abuse of discretion "if they involve an evaluation of witness credibility and demeanor." *In re S.V.*, 599 S.W.3d 25, 46 (Tex.

71

App.—Dallas 2017, pet. denied). We review conclusions of law *de novo*. *Id.* "Findings of fact may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *In re Reedle*, No. 05-16-01483-CV, 2017 WL 944030, at *2 (Tex. App.—Dallas Mar. 10, 2017, orig. proceeding) (mem. op.) (citing *In re L.A.F.*, 270 S.W.3d 735, 739 (Tex. App.—Dallas 2008, pet. denied)).

The child's best interest "shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002. The trial court is given "wide latitude" in determining a child's best interests. *Gillespie*, 644 S.W.2d at 451. "'[B]est interest' is a term of art encompassing a [broad] facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding). The best-interest determination is made based on several non-excusive factors:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

72

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (internal footnotes omitted).

Courts also consider the best-interest factors enumerated in section 153.134 of the

Family Code:

> (1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators; (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest; (3) whether each parent can encourage and accept a positive relationship between the child and the other parent; (4) whether both parents participated in child rearing before the filing of the suit; (5) the geographical proximity of the parents' residences; (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and (7) any other relevant factor.

TEX. FAM. CODE §153.134(a). And in making a possession order for a child under

three years old, the court must consider in determining the best interest of the child:

> (1) the caregiving provided to the child before and during the current suit; (2) the effect on the child that may result from separation from either party; (3) the availability of the parties as caregivers and the willingness of the parties to personally care for the child; (4) the physical, medical, behavioral, and developmental needs of the child; (5) the physical, medical, emotional, economic, and social conditions of the parties; (6) the impact and influence of individuals, other than the parties, who will be present during periods of possession; (7) the presence of siblings during periods of possession; (8) the child's need to develop healthy attachments to both parents; (9) the child's need for continuity of routine; (10) the location and proximity of the residences of the parties; (11) the need for a temporary possession schedule that incrementally shifts to a standard possession order . . . based on the age of the child or minimal or inconsistent contact with the child by a party; (12) the ability of the parties to share in the responsibilities, rights, and duties of parenting; and (13) any other evidence of the best interest of the child.

TEX. FAM. CODE § 153.254(a).[48]

When as here, a defendant files an answer but fails to appear at trial, a trial court may not render a default judgment on the pleadings. *Arevalo*, 2020 WL 5778813 at *3. The plaintiff is required to offer evidence and prove all aspects of its claim. *Id.* Thus, Victoria was required to provide the court with sufficient evidence to support her requests with respect to conservatorship and possession. *See Smith v. Hickman*, No. 04-19-00182-CV, 2020 WL 1442663, at *2 (Tex. App.—San Antonio Mar. 25, 2020, no pet.) (mem. op.) (in default context, "with regard to conservatorship, evidence must be presented to support a finding" of best interest of child).

## B. Analysis

Zach argues it was unreasonable for the trial court to ignore the Louisiana orders awarding Victoria supervised visitation, and that the record shows that the Texas trial court, frustrated with the Louisiana court's refusal to confer as required by the UCCJEA, made the "unreasonable choice" of exercising jurisdiction even though declining jurisdiction would have "eliminated all jurisdictional conflicts between the states." Zach asserts that the only evidence proffered at trial—that proffered by Victoria—does not support the best-interest determination the trial

---

[48] We note that C.J.S. turned three in December 2023, thus Section 153.254 is no longer applicable. However, we review the evidence before the trial court when it made its ruling, which occurred before C.J.S.'s third birthday.

court made in its conservatorship and possession orders awarding Victoria exclusive and primary rights regarding C.J.S's residence and education, and ordering that Zach's periods of possession be supervised.

As we have already concluded, the trial court did not err in exercising jurisdiction over Victoria's SAPCR or in declining jurisdiction in favor of the Louisiana Action. We further conclude that sufficient evidence supported the trial court's conservatorship and possession orders.

The evidence at trial included testimony that C.J.S. was born in Webster, Texas, and that he was "a little over a month" when he and Victoria began to travel to Louisiana to visit Victoria's son J. According to Victoria, her possession arrangement with respect to her older son J. was a 2/2/3 schedule, so she had to travel frequently from Texas to Louisiana to visit J. During that time, she maintained a residence in Texas and C.J.S. was registered on Medicaid in Texas. Victoria testified that she and C.J.S. lived in Texas until Zach took him to Louisiana in June 2021, without Victoria's consent.

Victoria testified that Zach worked on a boat as a deckhand either "working a week offshore or two weeks offshore and then only a week home." When Zach is away at work, Zach's mother cares for C.J.S. Victoria stated she did not believe it was in C.J.S.'s best interest for his paternal grandparents to raise him. Victoria requested that she and Zach be appointed joint managing conservators of C.J.S., but

that she be awarded the exclusive right to make decisions regarding invasive medical procedures, education, and psychological or psychiatric treatment. She testified that she believed such an arrangement was in C.J.S.'s best interest. She also requested that Zach have supervised visits with C.J.S. at this time, based on his taking the child and not allowing her to see him without supervision. Victoria testified that if Zach were granted unsupervised access to C.J.S., she believed Zach would try to take C.J.S. back to Louisiana. She also testified that she believed Zach would continue to violate the orders of the court because Zach believes Louisiana is the court with jurisdiction.

Victoria testified that after Zach took C.J.S. to Louisiana, she tried to coparent with Zach by texting him, "asking about doctor's appointments, things that [C.J.S.] is doing. And he gives me no answer saying that he has it handled." According to Victoria, when she learned that her son had been prescribed allergy medicine, Zach refused to tell Victoria what types of allergies C.J.S. had. She testified that C.J.S. was breastfed when Zach took him Louisiana in June 2021, and that Zach did not communicate with her regarding transitioning C.J.S. off breast milk or give her information about how C.J.S. was doing.

Victoria said her visits with C.J.S. had been "[r]ocky because my son doesn't know, really, who I am anymore," and the noisy environment in which she had supervised visitation made him "fussy" and "just uncomfortable." She testified that

she had not seen C.J.S. for approximately two months at the time of trial. She testified that her Louisiana attorney had not been successful in scheduling visits with C.J.S.

> In its Findings of Fact, the trial court found that Zach

> failed to act in the child's best interest, including by forcibly removing the child from [Victoria] after verbally agreeing with [her] to visit with and return the child to [her], by refusing to allow [Victoria] any contact at all with the child for numerous months after [Zach] took the child from [her], and by failing to communicate with [Victoria] concerning the child's condition, medical issues, and other important needs.

The court further stated in its Findings of Fact that Zach had not demonstrated "an ability to co-parent" with Victoria or to "facilitate or encourage" Victoria's relationship with C.J.S.; he had not shown an ability to put C.J.S.'s needs above his own; he was not available as a primary caregiver to C.J.S., given that his job requires him to work offshore for at least two weeks each month; his contact with C.J.S. was "minimal and/or inconsistent;" C.J.S. spends at least half of his time with Zach being cared for by Zach's parents; it is not in C.J.S.'s best interest to have no contact with Victoria or his half-siblings; Zach is likely to abscond with C.J.S. if he does not have supervised visitation; his actions have prevented C.J.S. from forming "healthy attachments" to Victoria and his siblings, adversely affecting his physical, medical, behavioral, and developmental needs; and C.J.S.'s current environment "significantly impairs [his] emotional development."

Zach argues that it was impossible for the trial court to consider many of the best-interest factors "because there was no evidence in the record offered to support them." Indeed, the court had a limited amount of information before it when it made its determination, in part because Zach did not participate at trial. But while limited, the trial court had sufficient evidence to support its best-interest findings. *See Payandeh*, 2019 WL 2528197 at *6 ("The factfinder is not required to consider all the factors, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding.") (citing *M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied)).

Victoria's testimony with respect to Zach's work schedule and Zach's parents caring for C.J.S. at least two weeks a month implicated several of the *Holley* best-interest factors: the emotional needs of the child now and in the future, the parental abilities of the individuals seeking custody, the plans for the child by those individuals seeking custody, and the stability of the home. *See In re D.L.N.*, 609 S.W.3d 237, 246 (Tex. App.—Texarkana 2020, no pet.) (holding trial court did not abuse discretion in ruling best interest of child required mother to have exclusive right to designate children's primary residence; noting children were primarily raised by paternal grandmother and great-grandmother during father's possession).[49]

---

[49] In *In re D.L.N.*, 609 S.W.3d 237 (Tex. App.—Texarkana 2020, no pet.), the trial court stated:

Evidence of Zach's refusal to coparent with Victoria, including his refusal to keep her updated as to the child's medical condition, his taking C.J.S. from Victoria in June 2021, and Victoria's difficulty in scheduling more visits with C.J.S. also speak to the factors contemplating the child's physical and emotional needs and Zach's parental abilities. *See Interest of J.C.K.*, No. 14-22-00936-CV, 2024 WL 236592, at *5 (Tex. App.—Houston [14th Dist.] Jan. 23, 2024, no pet. h.) (mem. op.) (holding trial court did not abuse discretion in determining it was in child's best interest to have relationship with both parents and that Mother should have exclusive right to designate child's residence in light of ad litem's concern that "if Father continued to be the primary custodial parent, the [c]hild would never see his mother"). The trial court was within its discretion to the extent it found these facts bode against Zach in its best-interest analysis.

Similarly, while evidence was not presented on every factor identified in Sections 153.134 and 153.254 of the Family Code, the evidence supported the trial court's possession order in light of the factors that were addressed. For example,

---

> The Supreme Court has held—and so have the cases that followed it —that it is in the children's best interest that whenever possible they be raised by a parent. And I know, [Father], that you are doing the best that you can, that you have a lot of obligations with your job, but it appears to the Court that the children are being primarily raised by your mother and grandmother and you whenever your job allows it.

*Id.* at 245.

with respect to Section 153.134, Victoria testified that it was not in C.J.S.'s best interest for his paternal grandparents to raise him, addressing the element of C.J.S.'s "physical, psychological, or emotional needs and development." *See* TEX. FAM. CODE § 153.134(a)(1). In addition, there was evidence concerning the parents' ability to "reach shared decisions" in C.J.S.'s best interest or "encourage and accept a positive relationship" between C.J.S. and both parents. *See id.* § 153.134(a)(2), (3). In support of these elements, Victoria testified that Zach refused to provide current information to Victoria regarding C.J.S.'s medical condition and refused to allow her to visit C.J.S. for months at a time. It is unclear to what extent, if any, Zach shared in the child-rearing before the filing of Victoria's SAPCR, as it is undisputed that C.J.S. lived with Victoria until Zach took him to Louisiana in June 2021.

With respect to Section 153.254, the evidence established that C.J.S. was in Victoria's primary care from birth until June 2021, and that Zach's offshore job, requiring him to be gone two weeks a month, called into question his availability as a primary caregiver. *See* TEX. FAM. CODE § 153.254(a)(1), (3). Victoria was able to offer C.J.S. access to his half-siblings during her periods of possession. *See id.* § 153.254(7). And there was evidence that Zach's refusal to coparent with Victoria hindered her ability to share in the responsibilities, rights, and duties of parenting. *See id*. § 153.254(12).

Zach relies on two cases from this Court in support of his argument that the trial court did not have sufficient evidence from which to make a best-interest determination. In *Giles v. Giles*, No. 01-20-00571-CV, 2022 WL 2251814, at *8 (Tex. App.—Houston [1st Dist.] June 23, 2022, no pet.) (mem. op.)., a mother who defaulted in the trial court filed a restricted appeal after the father of her children was awarded rights commensurate with being named sole managing conservator of their children. *Id.* at *7. At trial, the evidence showed the father did not "present[] any evidence of any of the facts or circumstances of the children, or of either parent, from which a best-interest determination could have been made" and, thus, we concluded the trial court "lacked sufficient information upon which to exercise its discretion." *Id.* at *8. In holding the trial court abused its discretion in rendering its order of conservatorship rights, we noted (1) the evidence was legally insufficient to support the best interest finding, and (2) the trial court granted the father relief not requested in his petition. *Id.*

*Arevalo v. Fink*, No. 01-19-00822-CV, 2020 WL 5778813 (Tex. App.—Houston [1st Dist.] Sept. 29, 2020, no pet.) (mem. op.) also involved a trial where one parent defaulted. We held the father's failure to appear at trial did not relieve the mother of "her burden to present evidence to support her appointment as sole managing conservator" of her daughter. *Id.* We observed there was "no evidence in the record regarding any of the required factors or any other evidence from which

81

the trial court could have determined the best interest of the child." *Id.* at \*3. The mother testified only that her six–year-old daughter lived with her and attended elementary school. *Id.* She "did not testify regarding any of the circumstances of the child or of either parent." *Id.* We held the mother's conclusory statement that her appointment as sole managing conservator was in her daughter's best interest did "not rise to the level of competent evidence that the trial court could use to determine the best interest of the child." *Id.*

*Giles* and *Arevalo* are distinguishable, because in those cases, there was no testimony regarding any circumstances of the children or the parents. In contrast, Victoria testified about Zach's job and the fact Zach's parents are responsible for taking care of C.J.S. for at least two weeks each month while Zach is away at work; that Zach took C.J.S. to live with him in Louisiana without her consent; that Zach refused to co-parent or communicate with Victoria about C.J.S.'s medical issues, doctor's visits, or transitioning him off of breast milk; that she had difficulty scheduling visits to visit C.J.S.; and that Zach's parents were equally uncommunicative with Victoria when they were caring for C.J.S. In addition, unlike the present case, the trial courts in *Giles* and *Arevalo* did not issue findings of fact and conclusions of law that specified why their determinations were in the best

interest of the child(ren). Finally, *Giles* is distinguishable because the trial court awarded the prevailing parent relief that was not requested.[50]

On the record before us, we conclude the trial court did not abuse its discretion in its conservatorship and possession orders awarding Victoria exclusive and primary rights regarding residence and education, and ordering that Zach's periods of possession occur under supervised circumstances. While we acknowledge that supervised visitation is rare in joint managing conservatorship, it may be appropriate when dictated by the circumstances. *See In re P.A. C.*, 498 S.W.3d 210, 219 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("The trial court does not abuse its

---

[50] Zach also argues the trial court's failure to render a prospective order to take effect on C.J.S.'s birthday was an abuse of discretion and violates Section 153.254(d) of the Family Code. We disagree. The Final Order provides prospective relief, negating the need for a new order after C.J.S. turns three. That is, because the Final Order attempts to cover matters that are not applicable at this time, such as marriage and enlistment in the armed forces, "it can be assumed that this order was intended to apply after the child['s] third birthday" and "the presumptive application of the standard possession order should be applied for the time after" C.J.S. reaches his third birthday." *See In re Marriage of Bertram*, 981 S.W.2d 820, 828–29 (Tex. App.—Texarkana 1998, no pet.) ("[B]ecause the order attempts to cover matters involving attendance at school, which is not applicable at this time, and situations in which the parents reside 100 miles or less apart, which is not the situation at this time, it can be assumed that this order was intended to apply after the children's third birthday."); *cf. In re K.L.S.*, No. 11-21-00094-CV, 2022 WL 401474, at *10 (Tex. App.—Eastland Feb. 10, 2022, no pet.) (mem. op.) (holding no new possession order needed on third birthday because final order signed when child was two years and ten months was to apply to child while "under the age of eighteen years and not otherwise emancipated"); *but see In re J.R.*, No. 05-19-00904-CV, 2020 WL 219315, at *6 (Tex. App.—Dallas Jan. 15, 2020, no pet.) (mem. op.) (remanding "for the sole purpose" of trial court's rendering of prospective order effective on child's third birthday in compliance with Section 153.254(d)).

discretion in fashioning restrictions on a parent's possession and access if the record contains evidence to support a finding that such restrictions are in the best interest of the children.") (citations omitted).

We overrule Zach's fourth issue.[51]

## Attorneys' Fees

In Zach's sixth and seventh issues, he complains about the award of attorneys' fees to Victoria.

## A.     Standard of Review and Applicable Law

Section 106.002 of the Texas Family Code addresses the award of attorneys' fees in a SAPCR:

> In a suit under this title, the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.

TEX. FAM. CODE § 106.002(a). We review an award of attorneys' fees under Section 106.002 of the Family Code for abuse of discretion. *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio 2015, no pet.); *In re S.V.*, No. 05-17-01294-CV, 2019 WL 1529379, at *5 (Tex. App.—Dallas Apr. 9, 2019, no pet.) (mem. op.) (citing *In re C.R.G.*, No. 05-10-01472-CV, 2012 WL 3133785, at *5 (Tex. App.—Dallas Aug.

---

[51]     In his fifth issue, Zach argues that if the possession and conservatorship orders are reversed, the trial court's orders regarding medical support and child support should likewise be reversed because they were materially influenced by a final determination on conservatorship and possession. Because we overrule Zach's fourth issue, we need not reach his fifth issue on appeal.

2, 2012, no pet.) (mem. op.)). In evaluating a fee award in a suit affecting the parent-child relationship, "we consider first whether the trial court had sufficient evidence upon which to exercise its discretion, and then whether it erred in its application of that discretion." *In re S.V.*, 2019 WL 1529379 at \*5 (quoting *In re S.V.*, No. 05-16-00519-CV, 2017 WL 3725981, at \*5 (Tex. App.—Dallas Aug. 30, 2017, pet. denied) (mem. op.)). A trial court abuses its discretion "when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Illif v. Illif,* 339 S.W.3d 74, 78 (Tex. 2011).

The reasonableness of an attorneys' fee award under Section 106.002 is a question of fact that must be supported by competent evidence. *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.). The Texas Supreme Court has held that the factfinder's "starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). The *Rohrmoos* court stated:

> Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services.

*Id.* This "lodestar" analysis applies to "any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed."

*Id.*[52] As we recently explained:

> The lodestar method of calculating attorney's fees is an objective analysis of whether attorney's fees are reasonable and necessary and provides a base figure that is "presumptively reasonable." Under the lodestar method, the court determines the reasonable hours spent by counsel in a case and the reasonable hourly rate for that work, then multiples the number of hours by the applicable rate. This number is the base fee or lodestar. The court may then adjust the number up or

---

[52] Prior to *Rohrmoos*, Texas courts considering attorneys' fee awards relied on factors enumerated in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The lodestar method "developed as a 'short hand version' of the *Arthur Andersen* factors and was never intended to be a separate test or method." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 490 (Tex. 2019). The *Arthur Andersen* factors are

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen*, 945 S.W.2d at 818 (quoting TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted in* TEX. GOVT' CODE, tit. 2, subtit. G app. (TEX. STATE BAR R. art. X, § 9)).

down "if relevant factors indicate an adjustment is necessary." *Jones v. Baker*, No. 01-22-00013-CV, 2023 WL 5353374, at *2 (Tex. App.— Houston [1st Dist.] Aug. 22, 2023, no pet.) (mem. op.) (citing *Rohrmoos*, 578 S.W.3d at 494, 496).

*Rohrmoos's* lodestar method does not apply to an award of contingent appellate attorneys' fees. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Rather, the party who seeks contingent appellate fees must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

## B.    The $35,000 Attorneys' Fee Award

Zach complains that the evidence was insufficient to support the trial court's award of attorneys' fees with respect to work done by Victoria's counsel, Victoria Venza and Carrie Westbrook.[53] The evidence submitted during trial was that Victoria incurred $19,750 in legal fees when Venza represented Victoria, and $15,700 in legal fees when Westbrook represented her.

Venza did not testify. Westbrook testified that her hourly fee was $400 per hour for appellate work and $350 per hour for trial work, but she did not testify about Venza's hourly rate or the number of hours each attorney worked on the case. She

---

[53]    Venza and Westbrook represented Victoria at trial and Westbrook represented Victoria during the mandamus proceeding in this Court in 2021.

testified that both she and Venza had been licensed attorneys for twenty years. Westbrook testified that the case "involves somewhat novel issues concerning UCCJEA, issues of jurisdiction, home state of the child and various issues of that concerning the jurisdiction disputes in the case." Westbrook further testified that the attorneys' fees "were necessary in this case especially given the fact that the appeal occurred and took several months to conclude as well as the fact that we've had issues of the other party absconding with the child, having to confer with counsel from another state and all of these issues that have occurred in this case."

The trial court stated in its Findings of Fact and Conclusions of Law that in awarding attorneys' fees, it "considered the Lodestar method and the factors set forth" in *Rohrmoos*. The trial court further found that the $35,000 in attorney fees Victoria incurred in this case "were reasonable and necessary for the safety and welfare of the child;" that the case "presented complex issues concerning jurisdiction" and a petition for writ of mandamus to the court of appeals; and that the hourly rates of Victoria's attorneys "are reasonable in Fort Bend County, Texas, and the surrounding area" for attorneys with the level of experience of Victoria's attorneys.

Zach argues the evidence was insufficient to support the trial court's apparent finding that "the admitted evidence justified the reasonableness and necessity of those fees as charged" by Victoria's attorneys, including the rates charged, services

performed, and nature of issues involved in the trial court and in the court of appeals during the mandamus proceeding.  We agree.  The evidence Victoria presented did not satisfy the "sufficient evidence" standard established in *Rohrmoos*.  *See Rohrmoos*, 578 S.W.3d at 502.  The proffered testimony concerning attorneys' fees did not identify who performed the particular services or when they were performed, the reasonable amount of time required to perform the services, or the reasonable hourly rate for each person performing the services.

The decision in *Sims v. Sims*, 623 S.W.3d 47 (Tex. App.—El Paso 2021, pet. denied), a SAPCR case, is instructive.  There, the appellee sought attorneys' fees and, during trial, his counsel "generally described the length of the case, the volume of motion of practice and hearing attendance involved, and the number of hours he spent on the case."  *Id.* at 67.  He testified as to his hourly rate, stating it was reasonable for attorneys in El Paso County.  *Id.*  The court held the appellee failed to meet his burden proving the reasonableness and necessity of his incurred fees: "Appellee did not offer billing records[54] substantiating the tasks performed or time

---

[54]   Although they are "strongly encouraged," billing records are not required to prove that requested fees are reasonable and necessary.  *Rohrmoos*, 578 S.W.3d at 502. While billing records are not required,

> legally-sufficient evidence to establish a reasonable and necessary fee needs to include a description of the particular services performed, the identity of each attorney who and approximately when that attorney performed the services, the reasonable amount of time required to

spent thereon, nor did he offer specific testimony regarding the 'particular services performed, . . . who performed those services, . . . approximately when the services were performed, [or] the reasonable amount of time required to perform the services[.]'" *Id.* at 67–68 (footnote added). The court held that because the evidence was insufficient to justify awarding attorneys' fees, the trial court abused its discretion in doing so. *Id.* at 68; *see also In re K.A.M.S.*, 583 S.W.3d 335, 350 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Without details about the work done, how much time was spent on the tasks, and how she arrived at the total fees in Mother's case, we conclude that Mother's attorney's testimony 'lacks the substance required to uphold a fee award' and thus is legally insufficient."); *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 841 (Tex. App.—El Paso 2019, no pet.) (holding that in absence of "detail about the particular services performed, who performed the services, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each person performing such services," attorney's testimony and accompanying exhibits "lack the substance required to uphold an award by the trial court for attorney's fees and expenses.").

---

perform the services, and the reasonable hourly rate for each attorney performing the services.

*In re K.A.M.S.*, 583 S.W.3d 335, 349 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Rohrmoos*, 578 S.W.3d at 497–98, 501–02, 502–03).

Similarly, in the present case, there was no testimony regarding the services performed by each attorney, the amount of time it took to perform any task, or when the task was performed. Nor was there any testimony regarding Venza's rates. Therefore, we conclude the trial court abused its discretion in awarding attorneys' fees to Victoria.[55]

We sustain Zach's sixth issue.

## C. The Award of Contingent Appellate Fees

Zach complains that the trial court's award of "attorneys['] fees on appeal" in favor of Victoria is "wholly unsupported by sufficient evidence justifying reversal." With respect to appellate attorneys' fees, the trial court's order states, "The Court FURTHER ORDERS attorney fees on appeal in favor of VICTORIA STERN."[56]

This award is problematic for several reasons. First, the appellate attorney fee award is unconditional. "An unconditional award of an appellant's appellate attorney's fees is improper." *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Sipco Serv's Marine v. Wyatt Field Serv.*, 857 S.W.2d 602, 607–08 (Tex. App.—Houston [1st Dist.] 1993, no writ)). *See also*

---

[55] If we reverse a trial court's attorneys' fee determination for lack of sufficient evidence, we remand the case to the trial court for a redetermination of fees. *In re K.N.H.*, No. 13-20-00347-CV, 2022 WL 243188, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2022, no pet.) (citing cases).

[56] The trial court did not make findings of fact or conclusions of law with respect to the appellate attorneys' fee award.

*Messier v. Messier*, 458 S.W.3d 155, 170 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A trial court may not grant a party an unconditional award of appellate attorney's fees because to do so could penalize a party for taking a meritorious appeal.").

The award is also problematic because it does not provide a specific amount to be awarded and was not supported by expert testimony about the services likely to be performed on appeal. The Supreme Court addressed the standard for a contingent award of appellate fees in *Yowell*, stating "with respect to contingent appellate fees, which have not yet been incurred and thus must be projected based on expert opinion testimony," "[t]here is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." 620 S.W.3d at 355. But "this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*; *see also Walsh v. Gonzalez*, No. 01-21-00729-CV, 2023 WL 4110851, at *11 (Tex. App.—Houston [1st Dist.] June 22, 2023, no pet.) (mem. op.) (reversing and remanding fee award for redetermination of fees after determining evidence in support of fees was legally insufficient); *Trujillo v. Shafaii Invs., Ltd.*, No. 01-22-00819-CV, 2024 WL

2001612, at *11 (Tex. App.—Houston [1st Dist.] May 7, 2024, no pet. h.) (mem. op.) ("We may not uphold a trial court's award of attorney's fees unless the record contains sufficient evidence to support the award. 'The party seeking attorney's fees bears the burden of proof' to support the trial court's award. If the evidence supporting the award is insufficient, we must reverse.") (citing *Yowell*, 620 S.W.3d at 354); *QJD Peking Duck Rest., Inc. v. TCP Spectrum Partners, Ltd.*, No. 01-22-00545-CV, 2023 WL 5436907, at *3 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023, no pet.) (mem. op.) (listing cases where contingent appellate attorney's fee awards were reversed because "the evidence did not address the services to be rendered on appeal or simply stated a lump-sum fee amount for appeal to the court of appeals or to the Texas Supreme Court").

During trial, Victoria's counsel stated only with respect to appellate attorneys' fees:

> In addition, Your Honor, we are requesting attorneys' fees if this does go up on appeal. We anticipate that once this order is finalized, Mr. Zach will appeal it up to the Texas appellate court, again, to challenge jurisdiction, even though that's already, in my opinion, been decided by the appellate court here.

This testimony is insufficient to support the award of contingent appellate fees.

We sustain Zach's seventh issue.

93

## Conclusion

We reverse the court's judgment as to the awards of attorneys' fees and appellate fees and we remand to the trial court for a determination of fees consistent with this opinion.  We affirm the trial court's Final Order in all other respects.

Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.